[Civil No. 4551.  Filed October 18, 1943.]

[142 Pac. (2d) 411.]

WESTERN COAL & MINING COMPANY, Appellant, v. FRED G. HILVERT, Appellee.

Messrs. Ellinwood & Ross, and Mr. Jos. S. Jenckes, Jr., for Appellant.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellee.

STANFORD, J.—Appellant sued to recover on three notes amounting to $237,833.97, together with interest

and attorneys' fees, except the sum of $166.03 credited on said amount.

Appellee pleads the statute of limitations.

The notes, together with certain certificates of stock given as security, were sold and assigned to this appellant by the previous owner.

The notes were dated Cincinnati, December 10, 1932, Cincinnati, December 12, 1932, St. Louis, January 3, 1933, and the complaint, which was filed here September 25, 1941, alleged that on December 20, 1938, appellee, in writing, acknowledged the justness of the indebtedness and impliedly promised to pay the notes, and appellant submitted an exhibit in reference to the said promise in writing by appellee as follows:

"Exhibit 'D'

"December 20, 1938.

"Western Coal and Mining Company,

"Missouri Pacific Building,

"St. Louis, Missouri.

"Gentlemen:

"The undersigned, in consideration of your consenting and agreeing to the Plan of Reorganization proposed by The S. A. Gerrard Company submitted by that Company on or about July 25, 1938, to the Income Debenture holders and the Stockholders of said Company, does hereby agree that, upon Western Coal and Mining Company delivering to The S. A. Gerrard Company the certificates for the Common Stock of The S. A. Gerrard Company which Western Coal and Mining Company holds as security for the obligations of the undersigned, and others, to the Western Coal and Mining Company, for exchange for the new Common Stock of The S. A. Gerrard Company pursuant to the said Plan of Reorganization, to endorse, in blank, ready for transfer, the certificates for said new Common Stock issued in exchange for said deposited stock; such endorsement to be in, substantially, the same manner, and for the same purpose that said deposited Common Stock has been endorsed by the undersigned.

"Said new Common Stock, when so endorsed and when received by Western Coal and Mining Company, will be deemed substituted by Western Coal and Mining Company, as holder of the certain notes signed by the undersigned and other parties and without releasing or in anywise impairing the liability of the undersigned under said notes; and said new Common Stock so deposited under said notes shall be as fully subject to the lien of said notes as if specifically referred to and described in said notes.

"(Signed)   Fred G. Hilvert."

By appellee's answer he admitted the execution of the notes and the execution of the Exhibit "D," but denied that he acknowledged the justness of his indebtedness to the plaintiff by the execution of the same. He also denied that he implied, or promised to pay the notes, and alleged that the notes were executed without the State of Arizona; that the $15,000 note dated December 10, 1932, accrued January 2, 1934; the note for $10,000 dated December 12, 1932, accrued January 2, 1934 and the note for $213,000 dated January 3, 1933, accrued January 3, 1934, and the action not having been commenced until more than four years thereafter, that they were barred by the provisions of Section 29–204 or 29–206, Arizona Code Annotated 1939.

Aside from the original pleadings above referred to, various pleadings were filed, but we think it sufficient for the case that we refer to the appellee's amended and supplemental answer by which the execution of the notes was again admitted. Limitations were pleaded by Sections 29–204, 29–205, 29–206, Arizona Code Annotated 1939. He also pleaded that there was no consideration for the transfer of the notes to the appellant and that the acquisition of the notes by appellant was *ultra vires,* inasmuch as the appellant was not qualified to conduct its corporate affairs in the State of Arizona. Appellant filed a reply to appel-

lee's amended and supplemental answer wherein it admitted its lack of qualification in the state, and admitted appellee's allegations with respect to the time of accrual of the causes of actions on the notes and the time of filing suit, and denied all other allegations, and alleged, however, that the notes were executed in the State of Arizona and set forth appellee's absences from the state as tolling the statute of limitations. The court granted the appellee's motion then made to strike the affirmative allegations and for judgment on the pleadings, and judgment on the pleadings was entered.

Coming here on appeal the appellant complains, among other things, the court erred in denying appellant's motion for summary judgment for the reason that all material issues of fact—the execution of the notes and letter of December 30, 1938, appellant's ownership of the notes, and the balance due thereon—were admitted or established by affidavit, and said letter constituting an acknowledgment by appellee of his indebtedness under said notes and an implied promise to pay within four years prior to the commencement of the action, entitled appellant to judgment as a matter of law.

The appellant complains that appellee's alleged absences from the state tolled the statute of limitations and appellant had the right to plead such facts in its reply in avoidance of appellee's amended answer.

When the appellee on December 21, 1938, transmitted to the appellant original letter or document referred to as appellant's Exhibit "D," together with a similar one signed by his wife, he wrote George J. L. Wulff, President, Western Coal and Mining Company, 1400 Missouri Pacific Building, St. Louis, Missouri, as follows:

"Dear Mr. Wulff:

"We enclose herewith signed form of agreement covering the exchange of stock in the S. A. Gerrard Company as to their plan of reorganization.

"We also agree to endorse in blank the certificates for the new common stock."

In the case of *John W. Masury & Son* v. *Bisbee Lumber Co.*, 49 Ariz. 443, 68 Pac. (2d) 679, 682, cited by the appellant, this is a case of where the appellant wrote the Bisbee Lumber Company at Lowell, Arizona, as follows:

" 'We have not had a remittance from you to liquidate your indebtedness . . . .

" 'Much to our regret we shall feel compelled to place the account with an agency unless we have an immediate substantial remittance and a satisfactory arrangement designed to discharge the entire balance.' "

In replying to that letter the Bisbee Lumber Company wrote them to the effect that their salesman had never returned since he left the goods with them and that they still had a large stock of goods on hand and that they felt entitled to some adjustment on the account. In reply to that letter the appellants offered a 20% discount, and in reply to that offer the appellees in that case said they were not satisfied with the amount, but would be willing to pay on the basis of 25¢ on the dollar after they had taken into consideration their loss in the handling of the stock, etc. Following that, suit was commenced. The court held that there was conditional promise only, and although the case is one of the most thorough we have had in our state from the standpoint of the history of the statute of limitations, it decided against the appellant, and quoted from Story on Contracts, S. 1013, as follows:

" ' . . . If there be no express promise to pay, a promise may be raised by implication of law, from

the acknowledgment of the party. But such an acknowledgment must contain an unqualified admission of the debt, and a willingness to pay it. An acknowledgment of the original justice of the claim is not sufficient to take the case out of the Statute, unless accompanied with an admission of the party's present liability. . . .' ''

That case also quotes from the case of *Moore* v. *Bank of Columbia,* 6 Pet. 86, 8 L. Ed. 329, as follows:

'' 'The Supreme Court of the United States in the case of *Moore* v. *Bank of Columbia,* 6 Pet. 86, 8 L. Ed. 329, maintained and laid down the rules to be the same as cited from Story. . . . From which it appears that there must be an acknowledgment of the debt existing and an expression of a willingness to pay it; both must concur; an acknowledgment of the debt is not sufficient; but there must be an expression of a willingness to pay.' ''

In the letter, or agreement, signed by Hilvert which has been referred to as Exhibit ''D'' and above quoted, we find there is no expression of the willingness to pay this debt and we realize it does not have to be expressed, but may be implied, but where is the implication, in view of Hilvert's letter of transmittal, when he mentioned what he is returning and tells why, but makes no reference to the note?

The appellee in the first part of his case in this court refers to the agreement, or letter, sent out to him as a form agreement to be signed by the others involved with Hilvert, but later they come to the gist of this case and intimate that probably it was a letter or agreement designed to get the signature of Hilvert without his knowledge. A matter that has occurred to us as being improper is, why would they want to send such a letter to Mrs. Hilvert? If the latter view of counsel is correct, we can see why and that is they could not afford to make any change in the letter to her in mentioning the notes because it would be obvious

to this appellee that he was signing something different than the agreement his wife was signing.

As we see it, Hilvert's letter of transmittal of Exhibit "D" tells the story. He states further in that letter what he is returning and what he is doing by returning it, but he does not say that he is also renewing the notes, nor can we catch an implication. And while in Exhibit "D" the appellant, when he transmitted it for signature, did not have to put in bold letters that this was a renewal of the notes, it could see from that letter of transmittal that Hilvert told all that he was assenting to, and in nowise did he agree to the renewal of the notes.

In plaintiff's pleadings there was a motion for a summary judgment on the theory that the letter of December 20, 1938 (meaning the agreement herein referred to as Exhibit "D"), was a sufficient acknowledgment of the justness of the debt and from it could be implied a promise to pay, and on March 16, 1942, the Superior Court from which this appeal is taken, denied plaintiff's motion for a summary judgment, which denial meant that the letter was not an acknowledgment of the justness of the debt nor could a promise to pay be implied therefrom. And in keeping with our view of this case, and without the necessity of entering into the other matters raised, we hold that the letter of December 20, 1938 was not an acknowledgment sufficient to revive the obligation.

Since there was no record in this case, such as a transcript of evidence, we are unable to, at this time, decide the issue of the various absences of the appellee from the state.

Accordingly the case is remanded for a new trial.

McALISTER, C. J., and ROSS, J., Concur.