669 P.2d 1339

**DE ANZA LAND AND LEISURE CORPORATION, an Arizona corporation, Plaintiff-Appellee,**

v.

**Joseph C. RAINERI and Eleanor C. Raineri, his wife; Ray Development Company, Inc., an Arizona corporation; Abra Water Company, Inc., an Arizona corporation; Wine Glass Ranches, Inc., an Arizona corporation; and B.A. Yarbro and Enid Yarbro, his wife, Defendants-Appellants.**

**Nos. 1 CA–CIV 5529, 1 CA–CIV 5564.**

Court of Appeals of Arizona,
Division 1, Department D.

April 14, 1983.

Rehearing Denied July 7, 1983.

Review Denied Oct. 4, 1983.

Fennemore, Craig, von Ammon & Udall by John J. O'Connor, III, Phoenix, for plaintiff-appellee.

Raineri & Raineri by Anthony J. Raineri, Scottsdale, for defendants-appellants Raineris.

Renaud, Cook & Videan, P.A. by J. Gordon Cook, Phoenix, for defendants-appellants Ray Development Co., Inc., Abra Water Co., Inc., Wine Glass Ranches, Inc. and B.A. Yarbro and Enid Yarbro.

## OPINION

GRANT, Judge.

This is an action to foreclose certain mortgages securing a promissory note executed by Ray Development Company. We hold that the suit is barred by the statute of limitations and therefore reverse the trial court.

On December 21, 1961, appellant Ray Development Co., Inc. (Ray Development) executed to the original creditor herein, Capitol Coal and Coke Company, a promissory note in the amount of $450,000. This note was secured by a mortgage upon real and personal property and other collateral security. The note and security were subsequently assigned to California Growth Capital, Inc. in 1964 and then to appellee, De Anza Land and Leisure Corp. (De Anza) in 1972.

De Anza filed a complaint on May 11, 1972 against Ray Development and numerous guarantors and lienholders, claiming that Ray Development was in default under the note and that an amount of $291,534.32 was then owed. De Anza prayed that the liens given to secure the note be foreclosed and the properties subject to the liens be sold by the sheriff of Yavapai County to provide the funds to finance the sale and the lawsuit, and to pay the amount due on the note.

By amended answer filed July 8, 1974, Ray Development pled the statute of limitations as an affirmative defense, stating that no payments were ever made under the terms of the promissory note and that the statute of limitations began running in December, 1962, De Anza opposed this defense by way of a motion for an order under rule 56(d), Arizona Rules of Civil Procedure, that the statute of limitations is not a defense to its right to foreclose on all the liens. In its supplemental response to the motion Ray Development cited *Atlee Credit Corp. v. Quetulio,* 22 Ariz.App. 116, 524 P.2d 511 (1974), in which this court held that a mortgage foreclosure action is barred when the statute of limitations has run on the underlying obligation. De Anza responded arguing that *Atlee* was incorrect and should not be followed.

On August 4, 1975, the trial court entered the following minute entry:

> The Court having duly considered Plaintiff's Supplemental Memorandum and *Atlee v. Quetulio, 22 A.Ap. 116, 524 P.2d 511,* and being duly advised, finds that Plaintiff's Motion for an Order under Rule 56(d) should be granted.

The court also entered an order on October 31, 1977, granting De Anza summary judgment in the amount of $277,256.99, plus interest in the amount of $166,693.15, "less any set-offs to which defendant may be entitled under said alleged agreements" to be determined at the trial. The matter was tried on November 15, 1977. In its opinion and order dated January 5, 1979, the court determined that no set-offs were allowable, and entered judgment according to the summary judgment as stated above.

The only issue we need to address in this appeal is whether De Anza's cause of action to foreclose on the mortgage is barred by the statute of limitations. A.R.S. § 12–548 provides as follows:

> An action for debt where indebtedness is evidenced by or founded upon a contract in writing ... shall be commenced and prosecuted within six years after the cause of action accrues ....

This action was brought almost ten years after the date of the first installment payment, December 21, 1962, the date appel-

lants assert the statute began to run.[1] Thus, we must determine whether the above statute of limitations applies to bar the foreclosure remedy when the underlying action for debt is barred.

Appellants argue that A.R.S. § 12–548 applies to an action to foreclose a mortgage given as security for a note, and thereby bars the foreclosure remedy when the action for debt is barred. Appellants cite *Atlee Credit Corp. v. Quetulio, supra,* in which this court expressly held just that, i.e., that a mortgage foreclosure action is barred when a statute of limitations has run on the underlying obligation.

De Anza asserts that *Atlee* is incorrect for several reasons: (1) that the court in Atlee ignored the plain wording of the statute which bars only "an action for debt" which is a separate and distinct remedy from a foreclosure action; (2) that the *Atlee* court violated the rule of statutory construction—*expressio unius est exclusio alterius*—which means the expression of one thing means the exclusion of another. By expressly barring the action on the debt, argues De Anza, the legislature intended to exclude a similar bar on the foreclosure action; (3) that the *Atlee* court ignored the rule of statutory construction that Arizona courts must adopt a statutory interpretation that is consistent with the common law unless the legislature clearly manifests its intention to repudiate the common law. At common law, argues De Anza, there was a presumption of payment after 20 years which afforded the mortgagor a valid defense; (4) that none of the authorities cited by this court in *Atlee* supports its holding; and (5) that the *Atlee* court, finding that no statute of limitations expressly relating to mortgages exists in this jurisdiction, illogically strained to bring mortgages under the limited umbrella of A.R.S. § 12–548.

There are two views on the question of whether a statute of limitations barring an action on the debt also bars the foreclosure of the mortgage securing the debt. *See*

*Annot.* 161 A.L.R. 886 (1946). The majority rule is that a mortgagee may foreclose his mortgage although the debt has been barred by the running of the statute of limitations. *Id.* at 887. This is the so-called "two-remedy rule." The reasoning behind this rule is that the bar affects only the remedy, not the right. Since the debt is not extinguished, the remedy under the mortgage still exists. *Id.* at 888. The minority view is that since the mortgage is merely incidental to the debt, the remedy of foreclosure falls with the bar of the debt. *Id.* at 892. This is referred to as the "incident rule."

Although both sides cite numerous cases in support of their positions, there is no Arizona case, other than the *Atlee* case, which directly addresses this issue. De Anza cites *Provident Mut. Building-Loan Ass'n v. Schwertner,* 15 Ariz. 517, 140 P. 495 (1914), wherein the Arizona Supreme Court stated: "Outlawry, [i.e., the bar] under the statute of limitation, affects the remedy and not the right. It does not extinguish or satisfy the debt." 15 Ariz. at 518, 140 P. at 496. De Anza argues that this language supports the existence of the two-remedy rule in Arizona. We do not agree.

The court in *Provident Mutual* was not presented with the issue raised here; rather, it simply held that where a property owner brings suit to remove a cloud on his property caused by an unsatisfied mortgage securing a debt barred by the statute of limitations, he is required to pay off the debt first. By the language quoted above, the court was making its point that although the creditor's remedy was barred, the landowner should be required to pay the debt if he wants equitable relief from the court. The other cases cited by De Anza from other jurisdictions merely show the existence of the majority view in those states.

The appellants cite various Arizona cases which assertedly support their conclusion

---

1. De Anza does not dispute this point.

that the security is incidental to the debt and consequently the debt statute of limitations applies. *See Merryweather v. Pendleton,* 90 Ariz. 219, 367 P.2d 251 (1961) ("The very essence of a mortgage is a subsisting obligation to pay."); *Hill v. Favour,* 52 Ariz. 561, 84 P.2d 575 (1938) ("The law seems to be well settled that the mortgage is a mere incident to the debt ..."); *Charter Gas Engine Co. v. Entrekin,* 30 Ariz. 341, 246 P. 1038 (1926) ("If there is no debt, there is no mortgage."); *Arizona Title Insurance and Trust Co. v. Kelly,* 11 Ariz.App. 254, 463 P.2d 838 (1970) ("There is but one judgment docketed in a foreclosure action, being the judgment for the full amount of the debt and that the foreclosure is ancillary.") In *Best Fertilizer of Arizona, Inc. v. Burns,* 116 Ariz. 492, 493, 570 P.2d 179, 180 (1977), the Arizona Supreme Court stated:

> This Court is committed to the modern doctrine that the debt or obligation secured is the principal thing and the mortgage is only an incident or accessory to it. It follows that whatever extinguishes, discharges or satisfies the debt or obligation will also discharge the mortgage. (citation omitted) Where there has been payment of a debt, the mortgage is released.

■ These cases are distinguishable, however, because they stand for the proposition that where a debt has been extinguished (or, as in *Merryweather,* where there is no clear and convincing evidence that a debt exists), the mortgage, being merely ancillary to it, also falls. In the case at bar, however, the debt is not extinguished; rather, the remedy for an action on the debt is merely barred.

■ We recognize that A.R.S. § 12–548 specifically refers to "an action for debt" and does not mention an action to foreclose a mortgage, as do statutes in some of the other states which impose the same period of limitations for both remedies. Nevertheless, we cannot accept appellee's argument that the 20-year presumption of payment rule applies as a limitation on foreclosure actions.[2] The legislature apparently intended to provide a statute of limitations on all causes of action. A reading of the entire limitation of actions statutes contained in Title 12, Chapter 5, shows that the legislature has comprehensively dealt with the matter. Various time periods ranging from one to ten years are imposed as limits on specific actions. A general limitation is provided in A.R.S. § 12–550 which applies to all actions for which no specific limitation is otherwise provided:

> Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward.

Thus, pursuant to the comprehensive legislative scheme, if A.R.S. § 12–548 were not the appropriate statute of limitation provision in a foreclosure action, A.R.S. § 12–550 would apply to impose a four-year statute of limitation in such actions. However, appellants did not urge the application of § 12–550 because, they argue and we agree, it would be absurd to apply a lesser limitation of action period to a security foreclosure than to the debt it secures.

For the foregoing reasons we decline to overrule our decision in *Atlee* and continue to hold that A.R.S. § 12–548 applies to foreclosure actions as well as to actions on the underlying debt.

■ The next question we must address is whether there has been a written, signed,

---

**2.** The presumption of payment originated in equity and was subsequently engrafted into the common law. *Berkshire Land Co. v. Federal Security Co.,* 199 F.2d 438 (3rd Cir.1952). It presumes the debt has been paid after the lapse of twenty years, although there is some controversy as to whether the presumption is rebut-table. 3 Powell on Real Property, ¶ 460, p. 696.36 (1975). "The presumption of payment is founded upon the experience of mankind that claims which are valid are usually not allowed to remain neglected." *Kirsner v. Hammond,* 256 Md. 570, 573, 261 A.2d 159, 160 (App. 1970).

acknowledgment by appellants of the justness of De Anza's claim subsequent to the time it became due so as to remove the applicable 6-year statute of limitations. A.R.S. § 12–508; *John W. Masury & Son v. Bisbee Lumber Co.*, 49 Ariz. 443, 68 P.2d 679 (1937).

Exhibit 11 in evidence is a sales agreement with an accompanying purchase trust agreement dated January 26, 1970, between California Growth Capital, Inc. (California Growth), De Anza's predecessor in interest, and Shelwyn-Edwards & Associates (Shelwyn-Edwards). The agreement provided for the sale of California Growth's interest in real property located in Chino Valley, Arizona, which included the property mortgaged by Ray Development to secure the note given to De Anza. Exhibit 12 in evidence is an agreement dated January 26, 1970, between California Growth and Yarbro, president of Ray Development. This agreement stated that California Growth was about to enter into an agreement to sell its interests in the Chino Valley properties to Selwyn-Edwards (exhibit number 11). The agreement goes on to state:

> Yarbro agrees that he has read said agreement of sale and that he will be benefited if such agreement of sale, or such agreement of sale as the same may be modified between the parties thereto, is entered into. Therefore, in order to induce California Growth to enter into said agreement of sale or a modification thereof, realizing that California Growth will enter into said agreement of sale or a modification thereof in reliance on Yarbro's agreement as reflected herein, it is agreed by and between the parties as follows:
>
> \* \* \* \* \* \*
>
> 2. Yarbro agrees that in any foreclosure proceedings in which California Growth or its successors in interest seek to obtain title to all or any of the property listed or referred to in the agreement of sale which is attached as Exhibit A

hereto, neither Yarbro nor any of the corporations in which he has or had an interest, nor any other person or entities controlled by or acting for or at the request or suggestion of Yarbro will oppose California Growth in any of said foreclosure proceedings.

Appellee argues that exhibits 11 and 12 establish that Yarbro's purpose in entering into the agreement with California Growth was to arrange for payments to be made on the note and thereby he has acknowledged the indebtedness under the note. Further, appellee argues that on October 24, 1977, Mr. Yarbro stated at his deposition that he had entered into an agreement with California Growth which provided that the obligee under the note would credit certain funds received against the balance due on the note. Appellee argues that this deposition, when coupled with the agreement discussed above, was enough to satisfy A.R.S. § 12–508 and bar the defense of the statute of limitations. We disagree.

█ It is well established that in order to remove the applicable statute of limitations, "there must be both (a) an acknowledgment of the debt, and (b) willingness to pay it." *John W. Masury & Son v. Bisbee Lumber Co.*, 49 Ariz. at 466, 68 P.2d at 689. *Accord, Western Coal & Mining Company*, 60 Ariz. 537, 142 P.2d 411 (1943). It is necessary to have a new promise made by the debtor after the statute of limitations has run to pay that particular debt. *John W. Masury & Son*, 49 Ariz. at 464, 68 P.2d at 688; *Cheatham v. Sahuaro Collection Service, Inc.*, 118 Ariz. 452, 577 P.2d 738 (App.1978). This new promise must be sufficient in itself to support an action for the debt, independent of the original promise. *John W. Masury & Son*, 49 Ariz. at 465, 68 P.2d at 689. The moral obligation to pay the debt after the statute of limitations has run is sufficient consideration for the new promise to pay the debt. *Hyder v. Shamy*, 45 Ariz. 130, 40 P.2d 974 (1935). We also note that the promise to pay may be implied. *John W. Masury & Son*, 49 Ariz. at 474, 68 P.2d at 692.

**268**

■ The acknowledgment of the justness of the claim, to be within the statute, must contain, directly or impliedly, an expression of the debtor that a moral obligation rests upon him to pay the original debt. *Id.* at 476, 68 P.2d at 693.

■ With these legal provisions to guide us, we are unable to find anything in the agreement between Yarbro and California Growth which either (1) acknowledges the justness of the debt, i.e., expresses a moral obligation to pay the debt, or (2) expresses a willingness to pay the debt. The agreement only provides that Yarbro will not oppose foreclosure proceedings in which California Growth seeks to obtain title to certain property. Granted, by foreclosing the mortgage, California Growth could bid in at the sheriff's sale and obtain a title thereto, and then turn around and sell the property, thereby recovering its losses from nonpayment of the note obtained from Ray Development. Yarbro's cooperation in this scheme was not a promise to pay the debt; rather, he merely condoned a device by which California Growth could recoup its loss through its own efforts and those of a third party.

■ In his subsequent affidavit, Yarbro testified that the reason he agreed not to oppose the foreclosures was because he expected that California Growth would credit certain funds received in the resale of the property to the note.[3] The agreement together with the subsequent affidavit is at best a conditional promise to see that the obligation under the note will be satisfied. Such a promise restrains the rights of the creditor to the terms proposed, and if he cannot recover by those terms, he cannot recover at all. *John W. Masury & Son,* 49 Ariz. at 469, 68 P.2d at 690. *"[T]he new remedy is on the terms proposed." Id.* at 469, 68 P.2d at 690–91. Thus, DeAnza's only remedy under the new promise allegedly made by Yarbro was to foreclose on the security involved herein under circumstances where neither Yarbro nor Ray Development would interfere.[4]

For the foregoing reasons, the judgment is reversed and this matter is dismissed.

HAIRE, P.J., and EUBANK, J., concur.

---

**3.** Appellants argued below that they were to receive an off-set in the amount of the reasonable value or resale price of the Patterson and Chino Valley property that California Growth purchased at sheriff's sales in 1967 and 1968. The lower court rejected this theory and appellants do not appeal from this finding.

**4.** Apparently the foreclosure and resale of the security never came about as De Anza cancelled the accompanying trust agreement in 1974.