**Angel ORTIZ, et al., Plaintiffs,**

**v.**

**TRINITY FINANCIAL SERVICES LLC, et al., Defendants.**

**No. CV–15–00001–TUC–CKJ.**

United States District Court, D. Arizona.

Signed March 26, 2015.

Don C.A. Parker, Glen A. Murphy, Spilman Thomas & Battle, Charleston, WV, for Plaintiffs.

James D. Lamp, Lamp O'Dell Bartram Levy & Trautwein, Huntington, WV, F. Scott Caudill, Mark A. Hunt, Mark A. Hunt & Associates, Bernard E. Layne, III, Mani Ellis & Layne, John J. Polak, Atkinson & Polak, Charleston, WV, for Defendants.

## ORDER

CINDY K. JORGENSON, District Judge.

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction to prevent the foreclosure sale of their residence at 1642 N. Placita Colonia De Oro, Tucson, AZ 85745 (Property); the sale has been stayed until April 2, 2015. Oral argument was heard on March 23, 2015.

The Court will deny the Motion.

## I. Background

This case was originally filed in Pima County Superior Court on December 17, 2014, and the Summons and Complaint was served on former Defendant MTC Financial Incorporated on January 2, 2015 [1]; the claims are for wrongful foreclosure in connection with a non-judicial foreclosure sale and breach of contract.[2] (Doc. 1, Ex. A.) Plaintiffs asserted wrongful foreclosure based on the statute of limitations. Defendant removed the case to the Federal District Court. Defendant asserts that the amount in controversy is in excess of $75,000 and that there is diversity jurisdiction. (Doc. 1 at 4, Ex. M.)

In addition to the Complaint, Plaintiffs filed an Application for a TRO and Order to Show Cause. (Docs. 5, 6.) The sale was originally scheduled for January 9, 2015; this Court issued an OSC on January 6,

2015, and set the matter for a hearing for January 8, 2015. The Application for a TRO and the hearing were vacated when the parties advised that they were attempting to resolve the case and that the sale was stayed until January 30, 2015. (Doc. 10.) Thereafter, the parties agreed to extend the sale date to February 17; however, the parties were unable to resolve the matter in settlement talks, and Plaintiffs requested that the Court hear the Motion for a Preliminary Injunction. (*See* Docs. 12, 13.) The parties agreed by Stipulation to extend the foreclosure sale date until March 3, 2015. (Doc. 13.) On February 18, the parties represented that they had agreed to stay the sale until April 2, and the Court so ordered and set the hearing on the preliminary injunction for March 23.

Plaintiffs filed a First Amended Complaint (FAC) on or about February 17. (Doc. 17.) It raises an additional claim of laches. Defendant filed a Motion to Dismiss. (Doc. 20.) The preliminary injunction motion was not amended to include the laches argument, but Defendant filed a response to the motion that addresses laches. (Doc. 25.)

## II. Facts

The facts are taken from the FAC and responses to the preliminary injunction motion.

According to Plaintiffs, they purchased the real property located at 1642 N. Placita Colonia De Oro, Tucson, AZ 85745 before 2005. They purchased the Property in part with a first mortgage lien executed in favor of National City Mortgage. Plaintiffs also took out a second mortgage lien

---

1. At the time of removal, Defendant Trinity had not been served. (Doc. 1–2 at 1 (Supplemental Civil Cover Sheet).) Plaintiffs dismissed MTC pursuant to Notice of Dismissal on January 22, 2015. (Doc. 11.)

2. The Petition for Removal states that the foreclosure is a non-judicial process. (Doc. 1 at 3.)

on the Subject Property executed in favor of GMAC Mortgage Corporation. Defendant Trinity is the assignee of GMAC's lien interest in the second mortgage.

Plaintiffs have failed to make payments on the GMAC Mortgage to Defendant Trinity and/or GMAC since September 2005. Plaintiffs filed for bankruptcy on June 1, 2005. The last payment of any kind made on the GMAC Mortgage was made prior to March 2007 and was made by the Bankruptcy Trustee on pre-petition amounts due.

Defendant asserts that it acquired the second trust deed lien in or about early 2014. It noticed a Trustee's Sale of the Subject Property on or about October 8, 2014. Plaintiffs argue that Defendant, as assignee of the GMAC Mortgage, failed to begin its action to foreclose its lien within the statutory time period to commence an action to foreclose a lien or, alternatively, delayed the sale which prejudiced Plaintiffs.

Plaintiffs have demanded that. Defendant cancel the Trustee Sale but Defendant has refused.

### III. Governing Standard for a Preliminary Injunction

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam) (citation omitted) (emphasis in original); *see also* Fed. R.Civ.P. 65. The Ninth Circuit has adopted two tests a district court must use when deciding whether to grant a preliminary injunction. *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir.2011) (finding District Court "made an error of law" by employing only one test when denying preliminary injunction). First, a plaintiff can attempt to satisfy the four-part test adopted by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Under the *Winter* test, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20, 129 S.Ct. 365. If a plaintiff cannot meet the *Winter* test, he may attempt to satisfy the second test by showing there are "serious questions going to the merits," the balance of hardships tips sharply in his favor, there is a likelihood of irreparable injury, and the injunction is in the public interest. *Alliance for the Wild Rockies,* 632 F.3d at 1135. This latter "sliding scale approach" allows a plaintiff to make a lesser showing of likelihood of success provided he will suffer substantial harm in the absence of relief. *Id.* at 1133.

### IV. Likelihood of Success on the Merits or Serious Questions Going to the Merits

#### A. Statute of Limitations

##### 1. Parties' Arguments

Plaintiffs argue that Arizona law requires a mortgage lender to begin an action to foreclose on its lien within six years and that no payment on the GMAC Mortgage has been made for over seven years. Therefore, Defendant is barred from pursuing its trustee sale. *See De Anza Land and Leisure Corp. v. Raineri,* 137 Ariz. 262, 669 P.2d 1339 (Ariz.App.1983) (holding an action to foreclose a mortgage securing a promissory note was barred by the statute of limitations when no payment was made for over six years).

Ariz.Rev.Stat. § 33–816 provides that:

The trustee's sale of trust property under a trust deed shall be made, or any action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the contract secured by the trust deed.

Ariz.Rev.Stat. § 12–548 provides in relevant part that:

A. An action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by or founded on . . . the following:

1. A contract in writing that is executed in this state.

Defendant argues that in *Navy Federal Credit Union v. Jones,* the Court of Appeals explained how to apply Ariz.Rev. Stat. § 12–548 when a debt is payable in installments. (Doc. 20 at 7.) The appellate court stated:

[I]f the acceleration clause in a debt payable in installments is optional, a cause of action as to future nondelinquent installments does not accrue until the creditor chooses to take advantage of the clause and accelerate the balance. Unless the creditor exercises the option, the statute of limitations applies to each installment separately, and does not begin to run on any installment until it is due. . . .

Moreover, whether or not an instrument contains an acceleration clause, exercised or not, is of no moment to the accrual of a cause of action for a defaulted installment, since an acceleration clause only accelerates the due date of future installments to the date of the exercise of the right of acceleration.

*Navy Federal Credit Union,* 187 Ariz. 493, 930 P.2d 1007, 1009 (Ariz.App.1996). In other words, "the six-year period commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the optional acceleration clause." *Id.* The court reasoned that as to defaulted installments, the rule encourages creditors to begin collection efforts before the last installment of a multi-year obligation is due, which furthers the purpose of a statute of limitations. On the other hand, the rule on future installments subject to acceleration gives the parties flexibility to resolve the issues.

Defendant asserts that the mortgage loan here provides for payment of interest and principal in monthly installments with the balance of indebtedness on the mortgage loan due on or before September 1, 2026. In addition, attached to the recorded Notice of Trustee's Sale (NOTS) is a Statement of Breach or Non–Performance dated October 8, 2014 giving notice of the occurrence of the breach of the Deed of Trust (DOT) for failure to pay installment of principal and interest which became due. (Doc. 25 at 3). Thus, Defendant argues that it exercised the optional acceleration clause in the DOT to obtain all unmatured future installments on the note from that date. Additionally, with respect to matured but unpaid installments, Defendant asserts it is entitled to foreclose on the DOT to obtain all unpaid installments having matured within six years of October 8, 2014. (*Id.* at 6.)

## 2. Analysis

The Court is not persuaded that Plaintiffs demonstrate a likelihood of success on the merits or serious questions going to the merits of the statute of limitations argument. As Plaintiffs pointed out at oral argument, they cite mortgage-foreclosure cases in their motion. But the cases do not address the issue raised here— when the cause of action accrues.

In *De Anza*, the Arizona Court of Appeals reaffirmed *Atlee Credit Corporation v. Quetulio* and stated that it would "continue to hold that A.R.S. § 12–548 applies to foreclosure actions as well as to actions on the underlying debt." *De Anza*, 669 P.2d 1339, 1343 (Ariz.App.1983), citing *Atlee Credit Corp. v. Quetulio*, 22 Ariz.App. 116, 524 P.2d 511 (1974). In *De Anza*, the holder of the promissory note and mortgage sued alleging that the borrower was in default on the note; the holder of the mortgage asked the court to foreclose on the liens securing the note. *De Anza*, at 1341. The borrower asserted the statute of limitations, claiming it began to run one year after execution of the promissory note. The mortgage holder argued that *Atlee* was incorrect to the extent that it held that a mortgage foreclosure is barred when the statute of limitations has run on the underlying obligation. *Id.* As noted, the appellate court rejected the argument. Thus a mortgage foreclosure action is, in fact, barred when a statute of limitations has run on the underlying debt. *Id.* at 1342. But in *De Anza*, the parties *agreed* that the statute of limitations began to run when the date of the first installment payment was due. *Id.* at n. 1. In other words, *De Anza* did not discuss the precise issue raised here. Likewise, *Atlee* appears to assume that the cause of action accrued when the borrowers defaulted. *Atlee*, 524 P.2d at 513.

Here, the parties clearly dispute when the statute of limitations accrued. The parties do not, however, dispute that the mortgage loan provides for payment of interest and principal in monthly installments with the balance of indebtedness on the mortgage loan due on or before September 1, 2026. (*See also* Doc. 26, Ex. A.) The last payment was made either before March 2005 or in 2007 by the bankruptcy trustee. Thus, under *Navy Federal Credit Union*, the statute of limitations applies to each installment separately and does not

begin to run on any installment until it is due. 930 P.2d at 1009. While some installment payments on the debt are barred by the six-year statute of limitations, others are not. Under *De Anza*, the time to foreclose is the same as the time to sue on the underlying obligation and has not run because the time on the underlying obligation has not run.

Plaintiffs cannot prevail on their statute of limitations argument.

## B. Laches

### 1. Parties' Arguments

In the preliminary injunction motion, Plaintiffs made no initial argument regarding laches because the claim was not raised until they filed their FAC.

Defendant argues there is no claim or cause of action for laches; rather it is an affirmative defense under Federal Rules of Civil Procedure 8(c)(1). There is no pleading filed by Defendant in this case to which Plaintiffs can affirmatively plead laches, so the FAC sets forth insufficient elements for such a theory.

Defendant further argues that:

> Laches applies when a defendant establishes the following by a preponderance of the evidence: (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of his claim(s) against the defendant; and (2) that delay prejudiced or injured the defendant.

*Lack v. Rustick*, 2008 WL 268712 *4 (D.Ariz.). Defendant concludes that Plaintiffs are not defendants and Defendant did not delay filing a "suit."

Defendant asserts that upon obtaining the second trust deed lien in or about early 2014, it recorded the NOTS by October, 2014; therefore, it acted promptly. (Doc. 26, Exs. D, F.) It contends that regardless

of the existence of the second trust deed lien, "Plaintiffs would have continued making payments on their first trust deed lien, property taxes, and property insurance. Plaintiffs also plead no communications with any beneficiary or lender on the second trust deed where the subject of the communication was abandonment of the second trust deed lien." (Doc. 25 at 7.) Thus, there is no prejudice.

Plaintiffs respond that laches is the "equitable counterpart to the statute of limitations, designed to discourage dilatory conduct." *Weinstein v. Weinstein (In re Indenture of Trust Dated January 13)*, 235 Ariz. 40, 326 P.3d 307, 315 (Ariz.App. 2014) (internal citation omitted). " 'Laches will generally bar a claim when the delay is unreasonable and results in prejudice to the opposing party' even where the applicable statute of limitations has not yet expired." *Id.; see also Highland Vill. Partners, L.L.C. v. Bradbury & Stamm Constr. Co.*, 219 Ariz. 147, 195 P.3d 184, 188 (Ariz.App.2008).

Plaintiffs dispute Defendant's argument they would have continued making payments on their first trust deed lien, property taxes, and property insurance because no reasonable person would pay off a first mortgage, pay property taxes and insurance, and maintain the home for 30 years knowing they would lose the home to foreclosure from the second mortgage. (Doc. 31.)

Plaintiffs further argue that Defendant's assertion it acted diligently does not defeat the laches claim because a debtor can assert claims and defenses against an assignee that it could have brought against the assignor. *See Independent National Bank v. Westmoor Elec. Inc.*, 164 Ariz. 567, 795 P.2d 210 (Ariz.App.1990) (citations omitted).

In addition, at oral argument, Defendant cited to *Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 336 P.3d 1274 (Ariz.App.

2014), which it cited in its reply brief in the Motion to Dismiss. (Doc. 32.)

## 2. Analysis

In view of the discussion and holding in *Manicom*, this Court finds that Plaintiffs do not demonstrate a likelihood of success on the merits or serious questions going to the merits of their laches argument.

In *Manicom*, buyers purchased real property encumbered by a deed of trust executed by the prior owners. The buyers did not have actual notice of the deed of trust at the time of purchase, and brought an action to quiet title when CitiMortgage issued a notice of sale pursuant to the deed of trust. *Id.* at 1276. The trial court granted summary judgment to the buyers on various grounds. On appeal, the Arizona Court of Appeals reversed and remanded. As to laches, the appellate court stated that the buyers had "not provided any Arizona authority to directly support the proposition that laches may be used to prevent a sale under a valid deed of trust. In fact, there is some authority for the view that laches cannot be employed simply to avoid the constructive notice provided by a recorded instrument." *Id.* at 1282, citing *Warren v. Whitehall Income Fund 86*, 170 Ariz. 241, 823 P.2d 689, 693 (Ariz. App.1991) (rejecting laches argument that would defeat purpose of lis pendens to provide constructive notice to potential buyers).

The appellate court also observed that it was bound by the Arizona Supreme Court decision in *Provident Mutual Building–Loan Ass'n v. Schwertner*, where the court held that when a property owner brings suit to remove a cloud on his title caused by an unsatisfied mortgage from his predecessor, he first must pay off the predecessor's debt. *Manicom*, 336 P.3d at 1282, citing *Provident Mutual Building–Loan Ass'n v. Schwertner*, 15 Ariz. 517, 140 P. 495, 496 (1914). In *Provident*, the court

reasoned that "equity will not grant relief, except upon condition that the debtor pay or tender payment of the debt secured." 140 P. at 496. The *Manicom* court wrote, "[t]hus, since our early statehood, we have followed the rule that 'the statutory action to quiet title cannot be sustained as against a mortgage debt confessedly unpaid.'" 336 P.3d at 1282, quoting *Provident*, 140 P. at 496; accord *Farrell v. West*, 57 Ariz. 490, 114 P.2d 910, 911 (1941); *Sec. Trust & Sav. Bank v. McClure*, 29 Ariz. 325, 241 P. 515, 517 (1925). The *Manicom* court further reasoned that it was without authority to make an exception to the rule:

> While we may be inclined to qualify this statement, making an equitable exception for situations in which the successor to a mortgagor has paid money for the property that could have satisfied the undiscovered debt, it is the role of our supreme court, not this court, to limit or modify the principle announced in *Schwertner* to accommodate such circumstances.

336 P.3d at 1282–83, citing *State v. Bejarano*, 219 Ariz. 518, 200 P.3d 1015, 1017 (Ariz.App.2008) ("[W]e may not disregard or modify the law as articulated by the Arizona Supreme Court.").

 Here, Plaintiffs clearly had notice of the Deed of Trust, the monthly installment payments, and the acceleration clause. They knew they had not made the payments on the loan, and there is nothing to suggest that the lender ever communicated an intention to forgive the loan. Plaintiffs had the benefit of living in the property, and they have not tendered payment of the secured debt. Based on the facts and on the law in Arizona, Plaintiffs cannot show a likelihood of success on the merits or even serious questions going to the merits of the laches defense.

Plaintiffs cannot demonstrate either a likelihood of success on the merits or serious questions going to the merits so the Court need not discuss the remaining requirements for a preliminary injunction. *See Alliance for the Wild Rockies*, 632 F.3d at 1135. Because the parties previously agreed to a stay of the foreclosure sale until April 2, 2015, the Court will not lift the stay.

**IT IS ORDERED** that Plaintiffs Motion for a Preliminary Injunction (Doc. 5) is **denied.**