NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JOSE MASTRANZO VELAZQUEZ, et al., *Plaintiffs/Appellees*,

*v.*

FMZ INDUSTRIES, INC., *Defendant/Appellant*.

No. 1 CA-CV 22-0136
FILED 2-21-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2019-008150
The Honorable Joseph P. Mikitish, Judge

**REVERSED AND REMANDED WITH INSTRUCTIONS**

---

COUNSEL

Combs Law Group, P.C., Phoenix
By Christopher A. Combs, Darlene Z. Twiss (argued)
*Counsel for Plaintiffs/Appellees*

Fennemore Craig, P.C., Phoenix
By Timothy J. Berg, Tyler D. Carlton (argued)
*Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　FMZ Industries, Inc. ("FMZ") appeals the superior court's grant of summary judgment quieting title in favor of José Mastranzo Velazquez and Maria Soledad Velazquez. FMZ argues that even if the statute of limitations bars it from collecting debt accrued under a land sale contract, no statute prevents it from asserting its title to the land.

**¶2**　　　　Because A.R.S. § 12-1104 applies to the "enforcement" of a "lien or interest" — and title is not an interest requiring enforcement to be effective — the superior court erred by reading A.R.S. § 12-1104 to prevent FMZ from asserting title, regardless of any limitation that may apply to the debt collection. And because the Velazquezes have established no rights or interests superior to FMZ's legal title, we reverse the judgment with instructions to grant summary judgment to FMZ.

### FACTS AND PROCEDURAL BACKGROUND

**¶3**　　　　In 2005, FMZ agreed to sell two parcels of real property in Phoenix ("Property") to Augustina Uriarte. The sale agreement ("Agreement") provides that FMZ could seek "[f]orfeiture by notice and reinstatement of the Purchaser's interest . . . in the manner provided in Arizona Revised Statutes Section 33-741 et seq." The Agreement also prohibited Uriarte from transferring or assigning her rights that did not comply with the servicing agency's requirements and provided that the Agreement is "binding upon the . . . successors and assigns" of the parties.

**¶4**　　　　According to FMZ's servicing agency, the last payment Uriarte made was in December 2007. Despite Uriarte's default in making payments, FMZ did not pursue forfeiture after waiting for the prescribed period.

**¶5**　　　　In 2007, the Velazquezes purported to purchase the Property from Manny La Farga, Uriarte's son. There are no documents evidencing this sale except for payment receipts from La Farga. Still, the Velazquezes placed a mobile home on the Property and have lived there since, making

monthly payments to La Farga—until he died in 2018—totaling $138,000. They also paid all property taxes since 2007, built a wall around the perimeter, and use the Property as an auto repair business.

**¶6**         In early 2019, Uriarte gave the Velazquezes a warranty deed conveying the Property. Then, in February of that year, Uriarte filed suit against the Velazquezes, alleging they had no ownership interest in the Property but had been leasing it from La Farga and that they fraudulently obtained the warranty deed. Uriarte passed away the same year, and the court dismissed her claims with prejudice.

**¶7**         The Velazquezes filed suit against FMZ soon after Uriarte's complaint was dismissed, claiming they were entitled to the Property under theories of adverse possession and quiet title. The parties filed cross-motions for summary judgment, and the court granted the Velazquezes' motion in part. The court found that the six-year statute of limitation for written contracts for debt and trust deeds barred FMZ from suing to foreclose and that the Velazquezes were entitled to quiet title. *See* A.R.S. §§ 12-548, 12-1104, and 33-816. The court also awarded the Velazquezes attorney's fees of nearly $75,000 and taxable costs under A.R.S. §§ 12-1103(B), 12-341, and 12-341.01. But the court ruled against the Velazquezes on the adverse possession issue, finding that "the [Velazquezes'] interests were not adverse to the world because [they] were making regular payments to Mr. La Farga."

**¶8**         The Velazquezes did not appeal the adverse possession ruling. But FMZ timely appealed the quiet title judgment, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

### DISCUSSION

**¶9**         We review the entry of summary judgment *de novo*. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 518, ¶ 9 (App. 2009). "[W]e view the facts in the light most favorable to the party against whom [summary] judgment was entered and draw all justifiable inferences in its favor." *Id.* at 517, ¶ 2. Summary judgment is appropriate when the "moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We also view questions of law, such as those about statutes of limitations, *de novo. Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 265, ¶ 6 (App. 2013).

## A.      Section 12-1104 Does Not Apply to the Assertion of Title.

¶10          When quieting title in the Velazquezes' favor, the superior court cited A.R.S. §§ 12-1104(B), 12-548, and *Rogers*. Arizona Revised Statutes Section 12-1104(B) reads:

> If it is proved that the interest or lien or the remedy for enforcement thereof is barred by limitation, or that plaintiff would have a defense by reason of limitation to an action to enforce the interest or lien against the real property, the court shall have jurisdiction to enter judgment and plaintiff shall be entitled to judgment barring and forever estopping assertion of the interest or lien in or to or upon the real property adverse to plaintiff.

¶11          The superior court found that this statute, as interpreted by *Rogers*, barred FMZ from asserting its title. *See Rogers*, 233 Ariz. at 271, ¶ 35 ("[T]he quiet title statute requires the court to enter judgment on behalf of a plaintiff against a defendant who cannot enforce a real property interest because the defendant's action is barred by limitation.").

¶12          But FMZ argues that the superior court erred when applying § 12-1104 because the statute "only gives the court power to determine if an interest is time-barred" and "no statute of limitations bars FMZ's ability to assert its interest as legal title holder." We agree.

¶13          Throughout this case, FMZ has had two distinct rights. The first, granted by the Agreement, was the right to installment payments over the life of the Agreement. The second, not created under but remaining *despite* the Agreement, was the right to ownership of the property. *See Wayt v. Wayt*, 123 Ariz. 444, 446 (1979) ("A contract for the sale of realty does not effect a transfer of legal title. The vendor remains the owner of the legal estate, while the vendee holds an equitable interest in the property."). The instrument of legal title represents the right to ownership. *See Title*, *Black's Law Dictionary* (11th ed. 2019) ("Legal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such evidence.").

¶14          Uriarte's default in 2007 granted FMZ the power to pursue a remedy for nonpayment. And the opportunity to collect on debt expires after six years. A.R.S. § 12-548(A)(1) ("An action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by . . . . [a] contract in writing that is executed in this state."); *see also Mertola, LLC v.*

4

*Santos*, 244 Ariz. 488, 490, ¶ 10 (2018) (explaining statutes of limitation accrue incrementally as to individual installment payments).

**¶15** But no such statute applies a limitation to FMZ's title. Although the superior court applied A.R.S. § 12-1104(B) to find such a limitation, under its plain language § 12-1104(B) applies to claims or defenses in just two circumstances: (1) when they arise from an "interest or lien" that is "barred by limitation," or (2) when "the remedy for enforcement thereof" is "barred by limitation." Even if FMZ's title falls under the umbrella of the "interest[s]" governed by § 12-1104(B), its title is not barred by limitation, nor does its title require any "enforcement" to remain effective. If anything, a quiet title action is an action to *enforce* the title.[1] *See* A.R.S. § 12-1102(5). But title owners are not time-barred from raising a quiet title action. *See Rogers*, 233 Ariz. at 266–67, ¶ 13 (quoting *Bangerter v. Petty*, 225 P.3d 874, 877, ¶ 12 (Utah 2009)) ("[I]f the action is a true quiet title action, meaning an action merely to 'quiet an *existing* title against an adverse or hostile claim of another,' then the statute of limitations will not bar the claim."); *City of Tucson v. Morgan*, 13 Ariz. App. 193, 195 (1970) ("[A] cause of action to quiet title for the removal of the cloud on title is a continuous one and never barred by limitations while the cloud exists."). Thus, § 12-1104(B) does not apply to the title claim.

**¶16** Under the correct A.R.S. § 12-1104 interpretation, it becomes apparent that the Velazquezes cannot rely on *Rogers*. The barred party in *Rogers* was not trying to assert title. *Rogers*, 233 Ariz. at 267, ¶ 15. Instead, the interest the barred party sought to enforce was an easement hostile to the title owner. *Id.* at 264, ¶ 1. And the barred party could not assert his easement because the very existence of the easement depended on another already-barred claim. *Id.* at 267, ¶¶ 13, 15 (quoting *In re Hoopiiaina Trust*, 144 P.3d 1129, 1137, ¶ 27 (Utah 2006)) ("[I]f the party's claim for quiet title relief can be granted only if the party succeeds on another claim, then the statute

---

[1] Our holding today does not require that a plaintiff must always assert present ownership of *record* title to begin a quiet title action. For example, plaintiffs asserting adverse possession may seek quiet title relief under § 12-1104(B) as a bar to the current record title owners' ability to enforce their recorded title interests, without having any recorded title interest themselves. *See, e.g.*, *Sparks v. Douglas & Sparks Realty Co.*, 19 Ariz. 123, 125 (1917) ("When one acquire[s] such a title or right [of adverse possession] it may be used either as a weapon or as a shield."). Even so, because the Velazquezes did not appeal the superior court's decision about their claim of adverse possession, these considerations do not apply.

of limitations applicable to the other claim will also apply to the quiet title claim."). Here, by contrast, FMZ is asserting its title, ownership of which is not dependent upon another claim.

¶17        Because § 12-1104 does not prevent the title holder from asserting title, the superior court erred by barring FMZ's claim. So we turn next to the merits of the cross-motions for summary judgment.

**B.        The Velazquezes Have Not Obtained Title to the Property, Only Acquiring the Purchaser's Interest Under the Agreement.**

¶18        Throughout this case, legal title to the Property has been held solely by FMZ. It remains with FMZ today. While the Agreement established a promise to tender title "upon fulfillment of Purchaser's obligation," Uriarte never fulfilled her obligation or obtained title because she defaulted on the payments in the installment contract in December 2007. Upon default, FMZ did not need to act to acquire the title because FMZ never conveyed the title to Uriarte. *See Mining Inv. Grp., LLC v. Roberts*, 217 Ariz. 635, 639, ¶ 13 (App. 2008) ("It is well-established that '[a] contract for the sale of realty does not effect a transfer of legal title,' which remains in the seller's name until the close of escrow.") (quoting *Wayt*, 123 Ariz. at 446); *Hoyle v. Dickinson*, 155 Ariz. 277, 280 (App. 1987) ("In a land contract, legal title to the property is not conveyed but remains in the vendor. . . . After payment in full of the sums due under the contract, the purchaser then receives legal title to the property.").

¶19        Under the Agreement, FMZ could pursue "forfeiture by notice and reinstatement of the Purchaser's interest . . . in the manner provided in [A.R.S. §] 33-741 et seq." Thus, "after expiration of the applicable period" and "after serving the notice of election to forfeit," FMZ could pursue forfeiture of Uriarte's interest under A.R.S. § 33-742. *See* A.R.S. § 33-743 (notice of election to forfeit). The applicable waiting period varies between 30 days and nine months, depending on how much of the purchase price has been paid. *See* A.R.S. § 33-742(D)(1)–(4). Despite its power to do

so, FMZ has not pursued forfeiture after the waiting period.[2] As a result, Uriarte retained her interest under the Agreement—the right to keep making payments, after which, FMZ would transfer title to the property.

**¶20** Still, the Velazquezes did not receive Uriarte's interest when they moved onto the Property in September 2007. Instead, they contracted with La Farga. While it is true that the Velazquezes made installment payments from 2007 to 2018 to purchase the Property, La Farga had no recognized interest in the Property to convey to the Velazquezes. Thus, despite their tender of value to La Farga, by the end of 2018, the Velazquezes had no rights in the Property because they had not been assigned rights under the Agreement, nor had their payments been given to FMZ.

**¶21** In 2019, Uriarte purported to convey her "right(s), title and interest" to the Velazquezes via a warranty deed. The record does not show that she notified or consulted FMZ's servicing agency in this process. Her failure to do so was a breach of the Agreement:

> No transfer or assignment of any rights hereunder shall be made by anyone having an interest herein, unless made in such manner and accompanied by such deeds and other instruments as shall be required by the Account Servicing Agent, nor until its regular fees and other costs shall have been fully paid, and all instruments deposited with the Account Servicing Agent.

**¶22** Still, we have held that even where an assignment breaches the agreement, the assignment remains effective. *See Hanigan v. Wheeler*, 19 Ariz. App. 49, 52 (1972) ("Where a contract contains a Promise to refrain from assigning, an assignment which violates it would not be ineffective. The promise creates a Duty in the promisor not to assign. It does not deprive the assignor of the Power to assign and its breach, therefore, would

---

[2] FMZ asserts that "[n]o provision within §§ 33-741 to 33-750 specifies any limitation period for effecting a forfeiture of a buyer's interest in the property once the buyer defaults by failing to pay. Instead, § 33-742 expressly provides that the seller has discretion on whether to enforce a forfeiture if the buyer defaults." Because of this discretion, FMZ argues that it should now, over ten years into Uriarte's default, still have a right to pursue forfeiture. As we reverse the summary judgment on other grounds, we do not reach this issue.

simply subject the promisor to an action for damages while the assignment would be effective.") Thus, while Uriarte's conveyance breached the agreement, it was not void, and her interest was transferred to the Velazquezes in 2019.

**¶23**      But Uriarte could not convey what she did not have. *See Melni v. Custer*, 162 Ariz. 153, 155 (App. 1989) (The receiver of a quitclaim deed "got nothing since [grantor] had nothing" and the deed "was of no legal effect."). Although her interest conveyance was valid, Uriarte did not have, and could not transfer, legal title. As a result, the Velazquezes acquired only Uriarte's interest under the Agreement. And because the Agreement is "binding upon the . . . successors and assigns" of the parties, as successors in interest, the Velazquezes received Uriarte's interest subject to the Agreement. Under the Agreement, the Velazquezes may only obtain title from FMZ "upon fulfillment of Purchaser's obligation." But the Velazquezes have not fulfilled the purchaser's obligation, so the title remains with FMZ under the Agreement.

**C.**    **The Velazquezes Have Not Established a Superior Claim to the Property over FMZ's Title.**

**¶24**      "It is, of course, the universal rule requiring no citation of authority, that it is plaintiffs' burden to establish their titles." *Allison v. State*, 101 Ariz. 418, 421 (1966). The Velazquezes did not meet this burden.

**¶25**      First, the Velazquezes claim that FMZ has "bare legal title." The Velazquezes define this term: "the holder of such title is missing some of the rights that full ownership would permit." Without citation, the Velazquezes assert that FMZ cannot retain ownership of the Property on "bare" title and that FMZ needed to exercise forfeiture to acquire "full legal title."

**¶26**      This argument is meritless. A title holder does not forgo land ownership because he has assigned one or more property rights to another. *See, e.g., Sturm v. Heim*, 95 Ariz. 300 (1964) (In a land sale contract, the seller delivered possession of land to the buyer, but the title remained, and was quieted in favor of, the seller.). And for cases involving transfers of real property, Arizona courts have used the term "bare legal title" to refer to what is held by trustees under deeds of trust. *See, e.g., In re Bisbee*, 157 Ariz. 31, 34 (1988). We use the term because the title held by a trustee "may at any time prior to sale be terminated by unilateral action of the beneficiary." *Brant v. Hargrove*, 129 Ariz. 475, 481 (App. 1981). This is unlike where the seller retains title to the property and is under no obligation to transfer it

until the purchaser satisfies the sale-agreement terms. While FMZ's title remains encumbered under the Agreement until it completes the forfeiture requirements under A.R.S. § 33-742, this does not equate to "bare legal title" applicable to deeds of trust.

¶27        Second, the Velazquezes argue that FMZ "lost any right to claim full legal title to the Property when [FMZ] *chose* not to take any action to enforce its rights for almost fourteen years." They conclude that "[FMZ] is barred from continuing to claim any ownership interest." But the mere passage of time does not divest a landowner of title.

¶28        As we explained, A.R.S. §§ 12-548 and 12-1104 do not bar FMZ from asserting title. And while limitations may apply to block the enforcement of debt under a sales contract, this is not relevant to the inquiry in a quiet title action. *Cf. Rogers*, 233 Ariz. at 266, ¶ 12 ("A quiet title action seeks a judicial determination of adverse claims in order to clear title of the disputed property.").

¶29        To be sure, we have held that the statute of limitations can bar a plaintiff from beginning a foreclosure on a mortgage. *See, e.g.*, *De Anza Land and Leisure Corp. v. Raineri*, 137 Ariz. 262 (App. 1983). In *De Anza*, a debtor sought to invalidate a foreclosure action brought by a creditor "almost ten years after the date of the first installment payment." *Id.* at 264. The debtor argued that "A.R.S. § 12-548 applies to an action to foreclose a mortgage given as security for a note, and thereby bars the foreclosure remedy when the action for debt is barred." *Id.* at 265. In reviewing this argument, we considered whether a statute of limitations bar for a remedy also affects the right associated with that remedy. *See id.* at 265. Although we identified two rules from other jurisdictions, we decided *De Anza* without adopting either rule, holding that "A.R.S. § 12-548 applies to foreclosure actions as well as to actions on the underlying debt." *Id.* at 266.

¶30        Despite our narrow holding (and despite that *De Anza* considered a mortgage, not present here), both parties now cite *De Anza* in support of their positions. The Velazquezes cite *De Anza* for the proposition that A.R.S. § 12-548 applies to actions *in rem*, "namely forfeiture actions and foreclosure actions." On the other hand, FMZ argues that, under *De Anza*, A.R.S. § 12-548 only "bars the ability to recover a property interest to satisfy a debt—e.g., through a foreclosure action—but it does not extinguish the property interest itself."

¶31      The Velazquezes' interpretation of *De Anza* is too broad. *De Anza* did not hold that A.R.S. § 12–548 applies to *any* case *in rem*. We explained:

> [W]here a property owner brings suit to remove a cloud on his property caused by an unsatisfied mortgage securing a debt barred by the statute of limitations, he is required to pay off the debt first. . . . [A]lthough the creditor's remedy [is] barred, the landowner should be required to pay the debt if he wants equitable relief from the court.

*De Anza*, 137 Ariz. at 265 (citing *Provident Mut. Building-Loan Ass'n v. Schwertner*, 15 Ariz. 517, 518 (1914) ("[The bar], under the statute of limitation, affects the remedy and not the right. It does not extinguish or satisfy the debt; it only prevents a recovery when properly invoked by the debtor.")). Thus, FMZ is correct that while *De Anza* extended the reach of A.R.S. § 12-548 to bar the remedy of foreclosure, nothing in our holding in *De Anza* suggests that the statute extinguishes the right of land ownership.

¶32      Furthermore, arguments about the weakness of FMZ's title do not carry the Velazquezes' burden of proving a superior claim because "[a] plaintiff pursuing a quiet title action must allege he holds title to the property; he cannot seek to quiet title solely based on the alleged weaknesses of his adversary's title." *Steinberger v. McVey*, 234 Ariz. 125, 140, ¶ 65 (App. 2014). The Velazquezes assert that the "'strength' of [their] title claim is based upon . . . the facts of this case." But each argument from these facts fails to establish a superior claim to the Property.

¶33      The Velazquezes note that they "obtained warranty deeds from Uriarte, who expressly stated . . . that she was the owner of the Property." Uriarte's erroneous legal claims do not support the Velazquezes' case. The Velazquezes claim that they paid $138,000 for the Property. But these payments, made to La Farga, failed to obtain ownership from FMZ. FMZ received none of the payments, and La Farga did not hold title to the property. The Velazquezes argue that their 12 years of use of the property, alongside improvements and operation of a business, support their claim to the Property. While these facts may give rise to an adverse possession claim, the superior court found that the Velazquezes did not adversely possess the Property, and the Velazquezes did not appeal that finding. In sum, none of the "facts of this case" prove a superior claim to FMZ's title.

¶34      We conclude that FMZ was not barred from asserting title and that the Velazquezes have failed to establish a superior claim. Thus, the

superior court erred by quieting title in the Velazquezes; instead, it should have granted summary judgment to FMZ.

## ATTORNEY'S FEES

**¶35**        FMZ requests that we reverse the superior court's award of attorney's fees and taxable costs to the Velazquezes. Because we vacate the court's ruling, we also vacate the court's awards.

**¶36**        FMZ also requests attorney's fees under the Agreement and A.R.S. § 12-341.01. The Agreement provides, in relevant part, "[i]f [FMZ] institutes suit against Purchaser to enforce [FMZ's] rights under this Agreement for Sale and obtains valid judgment against Purchaser, Purchaser agrees to pay all costs, expenses and attorney's fees of [FMZ]." But the provision of the Agreement does not apply because FMZ did not initiate an action to enforce the Agreement. Thus, we do not award attorney's fees under the Agreement.

**¶37**        Per our discretion, we also decline to award attorney's fees under § 12-341.01. But as the prevailing party, we award taxable costs to FMZ upon compliance with ARCAP 21.

## CONCLUSION

**¶38**        We reverse the quiet title judgment with instructions to enter summary judgment for FMZ.



AMY M. WOOD • Clerk of the Court
FILED:    AA

11