704 P.2d 275

**Beatrice A. STEWART,
Plaintiff-Appellant,**

v.

**Tom UNDERWOOD and Brenda
Underwood, husband and wife,
Defendants-Appellees.**

**No. 1 CA–CIV 7070.**

Court of Appeals of Arizona,
Division 1, Department D.

June 13, 1985.

Pavilack, Spack & Mulchay, P.C. by Russell J. Zarkou, Terry L. Rakow and Jonathan H. Randall, Scottsdale, for plaintiff-appellant.

Johnston & Grynkewich, by Gary S. Grynkewich, Tucson, for defendants-appellees.

## OPINION

HAIRE, Judge.

This is an appeal from summary judgment against the creditor, Beatrice Stewart, in a foreclosure action. The primary issue urged by appellant Beatrice Stewart is that her right to proceed *in rem* to foreclose a deed of trust on property owned by the Underwoods was not affected by the Underwoods' joint discharge in

bankruptcy.[1] We agree with appellant and reverse the summary judgment.

Tom Underwood executed a promissory note payable to Stewart in the sum of $20,000 plus interest. The note was secured by a deed of trust covering a residence owned by Tom Underwood in joint tenancy with his wife, Brenda. Brenda did not sign the deed of trust. The Underwoods subsequently filed a joint petition in bankruptcy under Chapter 7. 11 U.S.C. § 701 *et seq.* They listed the promissory note in the bankruptcy proceedings and the debt was eventually discharged. Stewart did not file a proof of claim in the bankruptcy proceedings, nor did she respond to an offer by the Underwoods to reaffirm the debt. Instead, approximately 18 months after the discharge, she commenced an action to foreclose the trust deed in the manner provided by law for the foreclosure of real property mortgages against the real property securing the debt.

Upon cross-motions for summary judgment, the trial court granted Underwood's motion, ruling that the deed of trust was null and void, presumably because of the discharge of the indebtedness in bankruptcy. Stewart's primary argument on appeal is that the discharge of Underwood's debt did not preclude her foreclosure action against the real property. She also contends that the trial court could not properly have ruled in favor of Underwood on any of the other arguments raised in the motion for summary judgment, arguing that the trial court had jurisdiction to foreclose the deed of trust and that the action was not barred by the statute of limitations.

■ We turn first to an analysis of Stewart's rights as a creditor holding a valid pre-bankruptcy lien. The majority view is clear: a valid pre-bankruptcy lien that is not avoided during the bankruptcy proceedings survives those proceedings unaffected. *Transamerica v. Trout*, 145 Ariz. 355, 701 P.2d 851 (App.1985); *In re Cassi*, 24 B.R. 619 (Bkrtcy N.D.Ind.1982);

---

1. The complaint by its terms also sought to impose personal liability on the Underwoods. Because of the discharge of the personal indebt-edness in bankruptcy, the only remedy now sought to be exercised by Stewart is foreclosure of her claimed security interest.

*In re Sillani,* 9 B.R. 188 (Bkrtcy S.D.Fla. 1981); *In re Weathers,* 15 B.R. 945 (Bkrtcy D.Kan.1981); *In re Robertson,* 4 B.R. 213 (Bkrtcy D.Colo.1980); *In re Cornist,* 7 B.R. 118 (Bkrtcy S.D.Cal.1980); *Siltzer v. North First Bank,* 445 So.2d 649 (Fla.App.1984); *Ducker v. Standard Supply Co., Inc.,* 280 S.C. 157, 311 S.E.2d 728 (1984); *Riggs National Bank of Washington D.C. v. Perry,* 729 F.2d 982 (4th Cir.1984); *Federal Deposit Ins. Corp. v. Davis,* 733 F.2d 1083 (4th Cir.1984). The secured creditor may enter the bankruptcy arena by filing a proof of claim and attempting to have the stay lifted as to his collateral, or he may wait and enforce his rights after the automatic bankruptcy stay is terminated. *See, e.g., In re Weathers;* 3 Colliers on Bankruptcy, para. 501.01, p. 501–4 (15th Ed. 1984).

Underwood concedes that this is the scheme intended by Congress in the 1978 Bankruptcy Code. He argues, however, that under Arizona law Stewart does not have a valid lien on the property. Underwood relies on *Best Fertilizers of Arizona, Inc. v. Burns,* 116 Ariz. 492, 570 P.2d 179 (1977), which held that under Arizona law a mortgage is incidental to the underlying debt, and stated "... that whatever extinguishes, discharges or satisfies the debt or obligation will also discharge the mortgage." 116 Ariz. at 493, 570 P.2d 179. Underwood therefore contends that the discharge of his debt in bankruptcy also discharged the mortgage, leaving no valid lien to be enforced.

The effect of a discharge in bankruptcy is determined by the bankruptcy Code. Stewart argues that the discharge acts only as a bar to enforcement of the debtor's personal liability, and that liens against the debtor's property are enforceable *in rem* after the discharge. This view is obviously a corollary to the rule that liens pass through the bankruptcy unaffected. Underwood responds that while that was true under the 1898 Bankruptcy Act, discharge is given a different effect under the 1978 Bankruptcy Code. He contends that Congress, in order to prevent creditors from exerting pressure on debtors to reaffirm discharged debts, has modified the discharge to go beyond the bar created under the Act and completely extinguish the debt for all purposes.

Underwood relies for support of this argument on *In re Williams,* 9 B.R. 228 (Bkrtcy D.Kan.1981), in which the bankruptcy court set forth the novel proposition that Congress had intended this drastic change in pre-Code law governing the rights of secured creditors. The court interpreted 11 U.S.C. § 524(a)(2) of the Code as enjoining post-discharge *in rem* actions by creditors who had not made an effort to protect their rights in the bankruptcy proceedings.[2] This interpretation, albeit arguable given the language of the provision, was widely criticized and rejected by other bankruptcy courts and ultimately resulted in an amendment deleting the reference to "property of the debtor" from § 524. Congress thereby clarified its intent to limit the injunction to preclude only actions taken to collect a discharged debt as a personal liability.[3] This amendment corrected the ambiguity which led to the erroneous interpretation advocated by the *Williams* court and removed the primary basis of the court's analysis.

A secondary basis of the decision, and of Underwood's argument in this case, is the misapprehension that § 524's injunction was intended to extinguish the debt and thus, necessarily, the lien. This conclusion was founded on an excerpt from the legislative history of § 524 reported at H.R. 95–595, 95th Cong. 1st Sess. 343 (1977).

---

**2.** § 524(a)(2) at that time provided:

"(a) A discharge in a case under this title ...

\* \* \* \* \* \*

"(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, *or from the property of the debtor,* whether or not discharge of such debt is waived...." (Emphasis added).

**3.** For discussion, *see* 3 Collier on Bankruptcy, para. 506.07, pp. 506–60–61 (15th Ed.1985).

The House Judiciary Report, discussing how the injunction was intended to accomplish the objectives of the discharge, stated that "[i]n effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." *Id.* at 366. Thus, the *Williams* court concluded, and Underwood urges now, that the discharge does, in fact, extinguish the debt and prevents secured creditors from foreclosing on their collateral.

 We find this interpretation of the House Report unconvincing, given its context, which clearly speaks only to extinguishment of personal liability, and the use of the words "in effect" which undercuts any contention that the discharge *actually* extinguishes the debt for all purposes. Moreover, the continued existence of the debt after discharge is recognized for other purposes. For example, a suit against a debtor may be continued if necessary to establish the liability of a surety or co-obligor. *See In re Cassi*, 24 B.R. 619, 622–24; 3 Collier on Bankruptcy, para. 524.01[3], p. 524–15 (15th Ed.1985). In *In re Hepburn*, 27 B.R. 135 (Bkrtcy D.N.Y.1983), a bankruptcy court case analyzing the effect of a discharge under the Code, the court, noting that the rule was the same as it had been under the Act, held that a landlord was entitled to pursue remedies for breach of a lease in state court notwithstanding the discharge of pastdue rent. The court explained that "[a] discharge in bankruptcy does not constitute a payment, or extinguishment, or a cancellation of the debt." We conclude, therefore, that the effect of discharge under the Code is the same as it was under the Act. It is not an extinguishment of the debt, but only a bar to enforcement of the debt as a personal obligation of the debtor.

Stewart asserts and we agree, that the Arizona court in *Best Fertilizers* did not contemplate this type of bar as destroying the mortgage when it stated that that which discharges the debt discharges the lien. The debtor in that case had completely paid his debt and the court forbade the holder of a mortgage executed as security for the loan from foreclosing on the property. The term discharge was utilized only in its general sense as meaning payment or satisfaction of an obligation, not in the technical sense in which it is employed by the Bankruptcy Code. We find *Best Fertilizers* inapplicable to this case. Similarly, we find Underwood's reliance on a second Arizona decision, *DeAnza*, inappropriate.

In *DeAnza Land & Leisure Corp. v. Raineri*, 137 Ariz. 262, 669 P.2d 1339 (App. 1983), we explained that Arizona follows the minority rule that "since the mortgage is merely incidental to the debt, the remedy of foreclosure falls with the bar of the debt." 137 Ariz. at 265, 669 P.2d 1339. Underwood contends, based on this language, that even if the bankruptcy discharge is only a bar to enforcement of his personal obligation, that the remedy of foreclosure is no longer available to Stewart. This interpretation is inconsistent with the *DeAnza* opinion read as a whole. The above-quoted language was merely a general statement of the incident rule. The issue before the court was whether a mortgage could be foreclosed several years after the statute of limitations had run on the underlying debt. We rejected the appellant's argument that the rationale of *Best Fertilizers* should apply, recognizing that a statutory bar to enforcement of the debt is not equivalent to its extinguishment. We then held that the legislature intended that the same six year statute of limitations apply to both an action on the debt and an action to foreclose the mortgage. We did not, as Underwood contends, hold that the statutory bar of an action on the contract by the statute of limitations precluded an action on the mortgage. Therefore we do not read *DeAnza* as supporting Underwood's argument that the statutory bar to enforcement of the debt created by the bankruptcy discharge should preclude an action to foreclose the deed of trust.

 We hold that Underwood's discharge in bankruptcy did not extinguish the debt, but only barred subsequent actions against him personally. We reject

the contention that Stewart's lien is invalid under Arizona law and accordingly we reverse the trial court's grant of summary judgment in favor of Underwood. Stewart's lien on the property is intact and may be foreclosed now that the bankruptcy stay has been terminated.

■ We consider next Underwood's contention that the trial court lacked jurisdiction to foreclose the deed of trust. A.R.S. § 33–725(A) provides as follows:

"When a mortgage or deed of trust is foreclosed, the court shall give judgment for the entire amount determined due, and shall direct the mortgage property, or as much thereof as is necessary to satisfy the judgment, to be sold."

Underwood argued in his motion for summary judgment, and reiterates on appeal, that the superior court lacked jurisdiction, apparently because it may not be able to award judgment for the entire amount due under the note. Underwood arrives at this result by a circuitous route, arguing that if the value of his interest in the property as of the time of discharge was less than the amount secured by Stewart's lien, then the difference became unsecured and Stewart should not be allowed the benefit of improvements to the property after the discharge because that would amount to "resecuring" portions of the debt. We reject this argument, which assumes that principles which would have applied if Stewart had filed a proof of claim in the bankruptcy proceeding are applicable here, because it is inconsistent with the rule that the lien survives bankruptcy unaffected. The Code provision which governs delay of proofs of claim is clearly permissive: "(a) A creditor ... may file a proof of claim." 11 U.S.C. § 501. Collier explains that although filing is a prerequisite to allowance by the bankruptcy court of the unsecured portion of a secured claim,[4] and thus to a distribution from the estate, that filing is unnecessary if the secured creditor has not asserted a

claim against the estate. 3 Collier para. 501.01, pp. 501–3–4. Where, as is the case here, the creditor chooses to wait and enforce her interest in the collateral after the stay has been lifted, her recovery is strictly limited to the value of that property. If there is a deficiency, she is without recourse because she can no longer pursue the debtor, his personal obligation has been discharged.

We see no conflict between the proper result under bankruptcy law and A.R.S. § 33–725(A). Bankruptcy law restricts the amount which the secured creditor may recover to the value of the collateral. State law permits the court to enter judgment in foreclosure for the entire amount due. The statute does not require the court to grant judgment for a deficiency, thereby subjecting the debtor to personal liability; it merely permits it to do so in non-bankruptcy foreclosures in order to avoid a multiplicity of actions. *See generally Darnell v. Denton*, 137 Ariz. 204, 669 P.2d 981 (App.1983). We conclude that the trial court had jurisdiction to enter judgment foreclosing Stewart's deed of trust.

■ Underwood's next contention is that Stewart's action was barred either when Underwood's debt was discharged or when the one year period within which a creditor may challenge the discharge of the debtor under 11 U.S.C. § 727(e) of the Code expired.

A.R.S. § 33–816 provides in part that:

"[A]ny action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the contract secured by the trust deed."

Under A.R.S. § 12–548 an action on a contract must be commenced within six years. Underwood argues that the bankruptcy

---

4. In order for a creditor to receive a distribution from the bankruptcy estate, the claim must be allowed by the bankruptcy court. § 502. If an allowed claim is secured by a lien on property, it is a secured claim to the extent of the value of

the collateral. § 506. If the creditor is undersecured, the creditor also has an unsecured claim for the rest of the debt which may be paid, on a pro rata basis, out of the bankruptcy estate.

court's order discharging the debt superseded the six year limitations period and immediately enjoined any further action on the contract. Thus, he concludes, the time within which an action could have been commenced on the contract has passed within the meaning of § 33–816. We are unpersuaded by this argument. A.R.S. § 33–816 was intended to do explicitly with trust deeds what this court found in *DeAnza* the legislature had intended implicitly with mortgages—to tie the limitation period for an action *in rem* to the same period applicable to an action on the contract. A.R.S. § 12–548 sets out a precise period of limitation, six years. There is no indication that our legislature intended to create some type of sliding scale in which enforcement of the lien is precluded if some fortuitous circumstance prevents an action on the contract. Neither is there any indication that Congress intended the bankruptcy discharge to interfere with state statutes of limitation. In fact, as discussed previously, the intent was to recognize the continued existence of the debt for purposes not inconsistent with the discharge of personal liability.

The Code provision cited by Underwood, 11 U.S.C. § 727(e), is obviously inapplicable to this situation. That statute provides that within one year a creditor may challenge a debtor's discharge of personal liability. Stewart is not challenging the discharge of personal liability, but properly pursuing her *in rem* foreclosure rights which were not touched by the discharge. Stewart's foreclosure action is not barred by any statute of limitations.

Finally, the Underwoods argue in their answering brief that Stewart has no rights against Brenda Underwood's interest in the joint tenancy property because Brenda did not join in the encumbrance of the property, and thus that Stewart's appeal is frivolous as to her. We do not agree. It is proper in a foreclosure action to join all parties having an interest in the real property in order that priorities may be established. As a joint tenant, Brenda Underwood was properly named in the action. Furthermore, Stewart points out that in the bankruptcy proceedings the Underwoods treated the note and deed of trust as a joint obligation. We do not purport to decide whether Brenda Underwood's interest in the property became subject to the deed of trust as a result of Tom's encumbrance of the property and the subsequent actions of the Underwoods relating thereto. Although that issue was apparently raised in the summary judgment proceedings in the trial court, there is nothing in the record to indicate that the trial court's judgment in favor of Brenda Underwood was based on anything other than the discharge in bankruptcy issue. The determination of whether Brenda's interest is subject to foreclosure is for the trial court to decide.

We therefore reverse the summary judgment in favor of the Underwoods, reinstate Stewart's complaint and remand for further proceedings in conformance herewith.

MEYERSON, P.J., and GRANT, J., concur.