IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDRA R MILLER DESIGNS LLC, *Plaintiff/Appellee*,

*v.*

US BANK NA, et al., *Defendants/Appellants*.

No. 1 CA-CV 16-0723
FILED 2-13-2018

Appeal from the Superior Court in Maricopa County
No.  CV2015-051479
The Honorable Aimee L. Anderson, Judge

**REVERSED AND REMANDED**

COUNSEL

Ramras Legal PLC, Phoenix
By Ari Ramras
*Counsel for Plaintiff/Appellee*

Quarles & Brady LLP, Phoenix
By Scott A. Klundt, Lauren E. Stine (argued), Amelia B. Valenzuela
*Counsel for Defendant/Appellant*

**OPINION**

Judge Paul J. McMurdie delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Jennifer B. Campbell joined.

**M c M U R D I E**, Judge:

¶1        U.S. Bank NA ("Bank") appeals the superior court's grant of summary judgment in favor of Andra R Miller Designs, LLC ("Miller") and the resulting final judgment. We reverse and remand to the superior court for further proceedings consistent with this opinion and hold that: (1) a purchaser of real property acquired at an execution sale under Arizona Revised Statutes ("A.R.S.") section 12-1622 has standing to assert a statute of limitations defense under A.R.S. § 33-816 and no additional contractual privity is necessary; (2) a creditor may unilaterally revoke its acceleration of debt; (3) unilateral revocation of the debt's acceleration requires an affirmative act by the creditor, which must communicate to the debtor that the debt's acceleration has been cancelled; (4) a notice of cancellation of the trustee's sale may be an affirmative act by the creditor sufficient to communicate to the debtor, and to any third party investigating title to the property, that the creditor cancelled the debt's acceleration if it contains a statement revoking the acceleration; and (5) recording the notice of cancellation of trustee's sale with language revoking the acceleration constitutes sufficient notice that the creditor has revoked the debt's acceleration.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The real property in question is a home located in Paradise Valley ("Property") in the Clearwater Hills Improvement Association ("HOA"). In July 2006, Don Davis ("Borrower") executed an Adjustable Rate Note ("Note") in favor of Washington Mutual Bank, FA ("WAMU") in the principal amount of $1,940,000. The Note was secured by a Deed of Trust ("Deed") encumbering the Property in the same amount. The Deed and Note allowed the lender to accelerate the debt upon default as follows: "If the default is not cured . . . Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."

¶3        Borrower failed to make the monthly payment due on September 1, 2008, and failed to cure his default after notice by WAMU. The notice sent by WAMU also contained a reference to the acceleration clause. In January 2009, the trustee recorded a Notice of Trustee's Sale ("2009 Notice"), but no sale was held. On March 5, 2012, the trustee recorded a "Cancellation of Notice of Sale, of Declaration of Default and Demand for Sale, and of Notice of Breach and Election to Cause Sale" ("2012 Cancellation Notice"), which included the following clause (Acceleration Revocation Clause):

> NOW THEREFORE: Notice is hereby given that the Beneficiary and/or the Trustee does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this cancellation shall not in any manner be construed as waiving or affecting any breach or default past, present or future, under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall in no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be said and remain in force the same as if said Declaration and Notice had not been made and given.

¶4        In February 2013, the HOA obtained a Judgment and Decree of Foreclosure and Order of Sale for unpaid planned community assessments, and other costs, in the amount of approximately $16,000. The Property was to be sold at a sheriff's sale, but the sale was not held at that time.

¶5        In May 2013, the trustee recorded a new Notice of Trustee's Sale ("2013 Notice"). In January 2014, the loan servicer sent Borrower a Notice of Default—Right to Cure ("Right to Cure Notice"), notifying Borrower he had the right to cure his default by paying $1,033,052.10 by February 22, 2014. The Right to Cure Notice stated that the lender could accelerate the debt if the borrower failed to cure the default. In June 2014, the trustee recorded a "Cancellation of Notice of Sale" ("2014 Cancellation Notice") to cancel the 2013 Notice. The 2014 Cancellation Notice contained the same Acceleration Revocation Clause as the 2012 Cancellation Notice.

¶6            In December 2014, the trustee recorded a new Notice of Trustee's Sale. In February 2015, Miller purchased the HOA Judgment. On March 26, 2015, a sheriff's sale was executed on the HOA Judgment, and Miller purchased the Property for the sum of $41,000. On March 27, 2015, Miller filed to enjoin Bank from foreclosing on its lien and conducting the trustee's sale of the Property. Both sides moved for summary judgment. The court granted summary judgment in favor of Miller, finding Banks's claim was barred by the statute of limitations based on Bank's acceleration of the debt in the 2009 Notice. Bank filed for reconsideration.

¶7            In its Motion for Reconsideration, Bank claimed it had paid $453,277 in property taxes and insurance on behalf of the Property, $62,596 of which was paid on or after April 1, 2015. Bank argued the later amount entitled it to initiate a foreclosure action, even if suit on the original loan amount was barred by the statute of limitations. *See Deutsche Bank Tr. Co. Americas v. Beauvais*, 188 So. 3d 938, 941 (Fla. 3d DCA 2016) (en banc) (holding that even though a lender's right to foreclose a previously accelerated loan balance was barred by the statute of limitations, the lender was not barred from initiating foreclosure based on different acts if the new foreclosure action was brought within the applicable statute of limitations); *Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1007 (Fla. 2004) (lender permitted to maintain a separate action for foreclosure for a default which occurred after acceleration on an earlier default). The superior court denied reconsideration, and entered a final judgment holding that Bank's lien was unenforceable. Bank timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶8            Bank argues the superior court erred by granting summary judgment because (1) Miller had no standing to raise the statute of limitations defense against Bank's enforcement of its lien; (2) if Miller does have standing, Bank revoked the debt's acceleration, which reset the statute of limitations on its foreclosure action; (3) the loan documents authorized Bank to pay for insurance and property taxes after the 2009 Notice, and the superior court should have considered Bank's argument even if it was first raised in a motion for reconsideration; and (4) it was error to hold that the lien was "unenforceable."

¶9            In reviewing an order granting summary judgment, we view the facts in the light most favorable to Bank, the party against which summary judgment was granted, and determine "*de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Galati v. Lake Havasu City*, 186 Ariz. 131, 133 (App.

1996) (quoting *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97 (App. 1993)); Ariz. R. Civ. P. 56(a).

## I.    Miller Had Standing to Raise the Statute of Limitations Defense.

¶10      Bank argues the superior court erred by finding the applicable statute of limitations expired on January 21, 2015, because Miller was not in privity to the Note, the Deed, or the Borrower, and thus did not have standing to raise a statute of limitations defense.[1] Whether a party has standing to assert a statute of limitations defense is a question of law we review *de novo*. *See Baier v. Mayer Unified Sch. Dist.*, 224 Ariz. 433, 438, ¶ 15 (App. 2010) (citing *Robert Schalkenbach Found. v. Lincoln Found., Inc.,* 208 Ariz. 176, 180, ¶ 15 (App. 2004)).

### A.    The Applicable Statute of Limitations.

¶11      An action to collect a debt evidenced by a written contract "shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward." A.R.S. § 12-548(A)(1). "The defense of the statute of limitations is a personal privilege that a debtor or one in privity may elect to urge or waive." *Acad. Life Ins. Co. v. Odiorne*, 165 Ariz. 188, 190 (App. 1990) (citing *Trujillo v. Trujillo*, 75 Ariz. 146, 148 (1953)). When the statute of limitations expires, however, the debt is not extinguished; rather, the remedy for an action on the debt is merely barred. *Provident Mut. Bldg.-Loan Ass'n v. Schwertner*, 15 Ariz. 517, 518–19 (1914) (when a debt has not been paid, the debt is not extinguished by the expiration of the limitation period, "only the remedy has been lost," preventing recovery when "properly invoked by the debtor"); *De Anza Land & Leisure Corp. v. Raineri*, 137 Ariz. 262, 266 (App. 1983).

¶12      "The deed of trust scheme is a creature of statutes." *Zubia v. Shapiro*, ___ Ariz. ___, ___, 2018 WL 387772, *4, ¶ 15 (Jan. 12, 2018) (quoting *BT Capital, LLC v. TD Serv. Co. of Ariz.*, 229 Ariz. 299, 300, ¶ 9 (2012)); *Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 156, ¶¶ 8−9 (App. 2014) ("[T]he Arizona's Deeds of Trust Act, A.R.S. §§ 33-801 through 33-821, . . . 'is a comprehensive set of statutes governing the execution and operation of deeds of trust.'") (citing *In re Bisbee,* 157 Ariz. 31, 33 (1988)). A six-year limitation period applies here because Bank is attempting to collect on a property interest secured by a Deed of Trust. Section 33-816 ties "the

---

[1]     The superior court found the 2009 Notice recorded on January 21, 2009, accelerated the debt and the trustee's sale was not held within six years, or by January 21, 2015.

limitation period for an action *in rem* to the same period applicable to an action on the contract." *Stewart v. Underwood*, 146 Ariz. 145, 150 (App. 1985). Section 33-816 specifies:

> The trustee's sale of trust property under a trust deed shall be made, or any action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the contract secured by the trust deed.

A.R.S. § 33-816; *see Stewart*, 146 Ariz. at 150 ("There is no indication that our legislature intended to create some type of sliding scale in which enforcement of the lien is precluded if some fortuitous circumstance prevents an action on the contract."); *Manicom v. CitiMortgage, Inc.*, 236 Ariz. at 158, ¶ 17 (any person interested in acquiring an interest in a real property has a "duty to search grantor and grantee indices for potential liens, at least for the relevant six-year limitation period provided for sales and foreclosures under deeds of trust") (citing cases).

### B. Miller's Interest in the Property Entitles It to Invoke a Statute of Limitations Defense.

**¶13** When real property is sold under execution at a public auction to the highest bidder, *see* A.R.S. § 12-1622(A), "the purchaser is substituted to and acquires all the right, title, interest and claim of the judgment debtor thereto," A.R.S. § 12-1626(A).

**¶14** Miller foreclosed on its junior lien, the HOA Judgment, and purchased the Property at a sheriff's sale, *see* A.R.S. § 12-1626(A), subject to Bank's senior lien, *see Mid–Kansas Fed. Sav. and Loan v. Dynamic Dev. Corp.*, 167 Ariz. 122, 130 (1991) ("[T]he purchaser at a foreclosure sale of a junior lien takes subject to all senior liens . . . . Although the purchaser does not become personally liable on the senior debt . . . the purchaser must pay it to avoid the risk of losing his newly acquired land to foreclosure by the senior lienholder . . . [and] the land becomes the primary fund for the senior debt.") (citations omitted); *see also Midyett v. Rennat Props., Inc.*, 171 Ariz. 492, 494 (App. 1992) (same). By purchasing the property at the sheriff's sale, Miller acquired the right to invoke the limitation period in an action *in rem* pursuant to § 33-816; no additional contractual privity was necessary. The court did not err by concluding Miller could raise the statute of limitations defense.

C. **The Statute of Limitations Had Not Expired Before the Filing of this Case.**

1. **The Statute of Limitations Was Initially Triggered by Bank's Acceleration of the Debt.**

¶15 When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power. *See Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 495 (App. 1996) ("[I]f the acceleration clause in a debt payable in installments is optional, a cause of action as to future nondelinquent installments does not accrue until the creditor chooses to take advantage of the clause and accelerate the balance. Unless the creditor exercises the option, the statute of limitations applies to each installment separately, and does not begin to run on any installment until it is due."); *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 508 (App. 1983) (cause of action accrues when holder exercises option to accelerate). To exercise its option to accelerate a debt, the creditor "must undertake some affirmative act to make *clear to the debtor* it has accelerated the obligation," even if the parties contractually agree the option to accelerate a debt need not require a notice to the debtor. *Baseline Fin. Servs. v. Madison*, 229 Ariz. 543, 544, ¶ 8 (App. 2012) (emphasis added) (citing cases). Demand of a full payment before all installments fall due constitutes a sufficiently affirmative act of acceleration. *See Jones*, 187 Ariz. at 495. The commencement of foreclosure likewise operates as an affirmative act of acceleration. *Prevo v. McGinnis*, 142 Ariz. 298, 302 (App. 1984) (citing *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488 (1966)).

¶16 The recordation of the 2009 Notice was an affirmative act of the debt's acceleration, *see Prevo*, 142 Ariz. at 302, which triggered the statute of limitations on Bank's right to foreclose its security interest, *see* A.R.S. § 33-816; *Jones*, 187 Ariz. at 495; *see also Webb*, 139 Ariz. at 508 (absent the debt's acceleration, each failure to make an installment payment gives rise to a separate cause of action); *Deutsche Bank Nat. Tr. Co. Americas v. Bernal*, 59 N.Y.S.3d 267, 270 (N.Y. Sup. Ct. 2017) (separate cause of action accrues for each mortgage payment that is not paid). Neither party argues the 2009 Notice did not accelerate the debt; the parties disagree regarding the effect of Bank's subsequent actions on the statute of limitations. Miller argues Bank failed to revoke the debt's acceleration and, because no trustee's sale was held within six years pursuant to A.R.S. § 33-816, the statute of limitations expired on January 21, 2015. Bank counters that its publicly noticed cancellations of trustee's sale with the Acceleration Revocation Clause, restarted the statute of limitations regarding future obligations in 2012 and in 2014.

## 2.    Bank Revoked its Acceleration of the Debt.

**¶17**        Bank argues the superior court erred by ruling Bank did not revoke the acceleration of the debt. Bank contends that each notice of cancellation canceled both the trustee's sale and the underlying acceleration of the debt; and that the Right to Cure Notice, which demanded payment of the delinquency and not all unpaid amounts under the note, also indicated the debt's acceleration had been cancelled.

**¶18**        Pursuant to Arizona's statutory scheme, a trustee's sale is cancelled, if it is not held or properly postponed, by "[a]n acknowledged recorded cancellation of a recorded notice of sale under a trust deed[, which] shall be sufficient if it is in substantially the following form: [legal description of the trust property, detailed information about the trust deed]." A.R.S. § 33-813(F), (G). Because both the 2012 and 2014 Notices of Cancellation were recorded and contained the required information, the relevant trustee's sales were properly cancelled.

**¶19**        Bank argues the language of the Cancellation Notices, in addition to the fact they were recorded, "reinstated the obligations secured by the Deed of Trust as though the Notices of Trustee's Sale had never been recorded," effectively restarting the limitations on the default and placing Bank in the position to exercise its power to accelerate the debt at its discretion.[2] We agree.

**¶20**        As noted above, to exercise its power to accelerate the debt, the creditor "must undertake some affirmative act to make clear to the debtor it has accelerated the obligation." *Madison*, 229 Ariz. at 544, ¶ 8. The parties acknowledge that acceleration of the debt can be revoked

---

[2]        The revocation of an acceleration would not reset the statute of limitations for payments already in default. *Webb*, 139 Ariz. at 508 (absent the debt's acceleration, each failure to make an installment payment gives rise to a separate cause of action); *Bernal*, 59 N.Y.S.3d at 270 (separate cause of action accrues for each mortgage payment that is not paid). In this appeal, we are not asked to apply the statute of limitations under A.R.S. § 12-548(A)(1) to defaulted payments and leave such application, if any, to the parties and court on remand. *See City of Phoenix v. Yarnell*, 184 Ariz. 310, 319 (1995) (court of appeals is to address only issues developed on the record, including issues of law presented on facts "put in issue by a properly focused motion").

unilaterally by the creditor.[3] *See Fed. Nat. Mortg. Ass'n v. Mebane*, 618 N.Y.S.2d 88, 89 (N.Y. App. Div. 1994) ("[A] lender may revoke its election to accelerate all sums due under an optional acceleration clause in a mortgage provided that there is no change in the borrower's position in reliance thereon."). Both the acceleration of a debt and the acceleration's revocation have equally important effects on a debtor's financial decision-making based on knowledge of the actual amount due. We thus hold that a unilateral revocation of the debt's acceleration requires an affirmative act by the creditor that communicates to the debtor that the creditor has revoked the debt's acceleration. *See Mebane*, 618 N.Y.S.2d at 89.

**¶21** The mere recordation of a cancellation notice is not, by itself, an affirmative act sufficient to revoke the acceleration of the debt, although it cancels the trustee's sale. *See Madison*, 229 Ariz. at 544, ¶ 8; *Mebane*, 618 N.Y.S.2d at 89 (court's dismissal of action to collect on accelerated obligation not "an affirmative act by the lender to revoke its election to accelerate" and does not affect running of limitations period). A cancellation notice filed under § 33-813, by itself, does not communicate an intent to revoke acceleration. For the cancellation of the trustee's sale to become an affirmative act by the creditor sufficient to revoke the debt's acceleration, the notice of cancellation must also contain a statement that the acceleration of the debt has been withdrawn. Because recording the notice of cancellation of trustee's sale is a public notice available to any party, we hold that, if the cancellation notice contains a statement revoking the acceleration, it provides sufficient notice "to the debtor," and to any third party investigating title, that the acceleration has been cancelled. *See Madison*, 229 Ariz. at 544, ¶ 8; *see also* A.R.S. § 33-813(F), (G).

**¶22** Because Bank inserted the Acceleration Revocation Clause into the 2012 and 2014 Notices of Cancellation, it sufficiently communicated to the Borrower, and to any third party investigating title to the property, that Bank was also revoking the debt's acceleration. The Acceleration Revocation Clause informed the Borrower that the "Beneficiary and/or the Trustee does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale ["Declaration and Notice"]; . . . and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be said and remain in force the same as if said Declaration and Notice had not been

---

[3] Parties may also negotiate a modification or a forbearance agreement or the debtor may reinstate the loan by curing defaults pursuant to § 33-813(A) and (B).

made and given." Because the Declaration and Notice caused the acceleration, its withdrawal ("as if [it] had not been made") constituted the affirmative act and revoked the debt's acceleration. *See Madison*, 229 Ariz. at 544, ¶ 8. The additional language, although not a model of clarity, merely informed the Borrower of its continuing default on the loan and Bank's rights secured by the Deed.

**¶23** Therefore, no genuine dispute can be maintained about the effect of the 2012 and 2014 Cancellation Notices. *See* Ariz. R. Civ. P. 56(a). We reverse the grant of summary judgment in favor of Miller and vacate the corresponding judgment, including the award of attorney's fees associated with that judgment. Because the acceleration's revocation reset the statute of limitations in 2012, as well as in 2014, we find the statute of limitations regarding future obligations has not run, and remand the case for further proceedings consistent with this opinion. *See supra* note 2. Because it is not necessary to our holding, we decline to reach Bank's arguments relating to its payments for property insurance and taxes and the scope of relief granted to Miller. *See State v. Hardwick*, 183 Ariz. 649, 657 (App. 1995) (the court need not review other arguments if one argument is dispositive).

## II.        Attorney's Fees on Appeal.

**¶24** Both parties request we award their attorney's fees incurred on appeal pursuant to A.R.S. § 12-341.01 and Arizona Rule of Civil Appellate Procedure 21. Section 12-341.01(A) provides a court with discretion to award reasonable attorney's fees to a successful party "[i]n any contested action arising out of a contract." *See also Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 423–24, ¶ 40 (App. 2010). In our discretion, we decline to award either party its attorney's fees incurred on appeal. We award Bank its taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶25      For the reasons stated above, we reverse the judgment and remand for further proceedings consistent with this opinion. We award Bank its taxable costs incurred on appeal upon compliance with Arizona Rules of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA