IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

─────────────────

PEDRO U. DIAZ AND NOEMI C. DIAZ,
HUSBAND AND WIFE,
*Plaintiffs/Appellants,*

*v.*

BBVA USA,
FKA COMPASS BANK, A CORPORATION,
*Defendant/Appellee.*

No. 2 CA-CV 2021-0046
Filed January 7, 2022

─────────────────

Appeal from the Superior Court in Pinal County
No. S1100CV202001239
The Honorable Steven J. Fuller, Judge

**AFFIRMED**

─────────────────

COUNSEL

Denny & Boulton P.C., Phoenix
By G. Michael Denny
*Counsel for Plaintiffs/Appellants*

Akerman LLP
By Erin E. Edwards, Chicago, Illinois
*Counsel for Defendant/Appellee*

**OPINION**

Judge Brearcliffe authored the opinion of the Court, in which Presiding Judge Eppich and Chief Judge Vásquez concurred.

B R E A R C L I F F E, Judge:

¶1     Pedro and Noemi Diaz appeal from the trial court's dismissal of their action to quiet title. The Diazes contend the court erred by concluding that the six-year statute of limitations to enforce the subject deed of trust would not begin to run until the earlier of its maturity date or the creditor's acceleration of the underlying debt. The Diazes contend that the limitations period began, at the latest, when their debt was discharged in bankruptcy. For the following reasons, we affirm.

**Factual and Procedural Background**

¶2     The Diazes' complaint to quiet title to their home was dismissed by the trial court under Rule 12(b)(6), Ariz. R. Civ. P., for failure to state a claim. "When a motion to dismiss for failure to state a claim is granted, review on appeal necessarily assumes the truth of facts alleged in the complaint." *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 2 (App. 2007) (quoting *Logan v. Forever Living Prods. Int'l, Inc.*, 203 Ariz. 191, ¶ 2 (2002)). Documents attached to, or incorporated by reference in a complaint, are similarly considered. *See Belen Loan Invs., LLC v. Bradley*, 231 Ariz. 448, n.8 (App. 2012) (citing *Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, LLC*, 224 Ariz. 60, ¶¶ 10, 14 (App. 2010) (documents referenced but not attached are considered when they are central to complaint)). The facts below are drawn from both the Diazes' complaint and the deed of trust cited in, and central to, the complaint.

¶3     In April 2005, the Diazes executed a note for a home equity line-of-credit ("HELOC") with Compass Bank, now BBVA, for the principal amount of $145,000. The Diazes secured the note with a deed of trust on their home, for the benefit of BBVA. As described in the deed of trust, the credit agreement was a revolving line of credit, allowing the Diazes to borrow funds at their discretion, repeatedly, up to a limit of $145,000 while they made monthly payments. Each payment on the balance would replenish the amount available to the Diazes. The deed of trust's maturity date is April 9, 2040.

¶4　　　　The Diazes' last payment to BBVA under the note was made before March 2012 and they have made no payments since then. In March 2012, the Diazes filed for bankruptcy relief, under chapter 7 of the bankruptcy code, and were granted a discharge of debts in August 2012.[1] The Diazes' then-existing debt to BBVA under the note was included in the bankruptcy discharge. BBVA and the Diazes did not enter a reaffirmation agreement.[2] We assume for the purposes of this decision that the entirety of the outstanding debt to BBVA was discharged in the bankruptcy action.

¶5　　　　Under the deed of trust, the Diazes' failure to "meet the repayment terms" of the HELOC after March 2012 was an event of default. Upon an event of default, BBVA could elect "one or more" of identified remedies, including acceleration (as lender, by declaring "the entire indebtedness immediately due and payable") and foreclosure (as trustee, "by notice and sale," or as lender, "by judicial foreclosure"). The Diazes agreed in the deed of trust that BBVA does "not give up any of [its] rights under [the] Deed of Trust unless [it] does so in writing," and that "[t]he fact that [BBVA] delays or omits to exercise any right will not mean that [BBVA] has given up that right." They further agreed that the deed of trust would secure any obligation to BBVA "whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable." It is undisputed that BBVA had not, as of the date of the complaint, exercised or attempted to exercise either acceleration or foreclosure under the deed of trust.

¶6　　　　Eight years after receiving the bankruptcy discharge, in August 2020, the Diazes filed this quiet title action to preemptively bar BBVA "from having or claiming any right or title" to their home adverse to theirs, and a "[j]udgment extinguishing" the deed of trust. They asserted that more than six years had passed since both their first uncured, missed

---

[1] *See* 11 U.S.C. §§ 524, 727.

[2] "A reaffirmation agreement is one in which a debtor agrees to pay all or part of the dischargeable debt after a bankruptcy petition has been filed." 9D Am. Jur. 2d *Bankruptcy* § 3659, Westlaw (database updated November 2021). A bankruptcy petitioner may enter into a reaffirmation agreement with a secured creditor to prevent foreclosure on the collateral. *See* 9D Am. Jur. 2d *Bankruptcy* § 3513, Westlaw (database updated November 2021) ("The debtor can avert foreclosure in such a situation . . . by . . . a reaffirmation of the mortgage debt which preserves the debtor's personal liability in spite of discharge . . . .").

payment in March 2012, and the date of their "last payment owed," which is, effectively, the date of the bankruptcy discharge in August 2012. Consequently, they argued, because BBVA had failed to enforce the deed of trust within Arizona's six-year limitations period, it was forever barred from doing so. A.R.S. § 12-548(A)(1); *see* A.R.S. § 33-816 (statute of limitations for contract applies to deed of trust securing contract). BBVA filed a motion to dismiss, arguing the statute of limitations had not run, and would not begin to run until either April 2040—the maturity date of the deed of trust—or its election to accelerate the underlying debt. The trial court granted BBVA's motion, dismissing the complaint with prejudice, and this appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Analysis

¶7 In granting BBVA's Rule 12(b)(6) motion to dismiss, the trial court determined that BBVA was not barred by the statute of limitations and that the Diazes had therefore failed to state a claim upon which the relief they sought could be granted. On appeal, the Diazes argue that the trial court erred by: (1) applying precedent that requires a creditor to accelerate a debt to commence the six-year statute of limitations and (2) "applying legal precedent without regard to the legal significance of [their] bankruptcy discharge." We review the dismissal of a complaint under Rule 12(b)(6), de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 7 (2012). Dismissal is only appropriate under Rule 12(b)(6) if "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* ¶ 8 (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, ¶ 4 (1998)). "The accrual of the cause of action and the interpretation of a statute of limitations are legal questions, which we review de novo." *Mertola, LLC v. Santos*, 244 Ariz. 488, ¶ 8 (2018).

### *Navy Federal, Webster* and *Miller* versus *Mertola*

¶8 In support of their claim that the trial court erroneously dismissed their complaint, the Diazes cite to *Mertola*, 244 Ariz. 488. In *Mertola*, a couple entered into a consumer credit card agreement with a bank and the agreement contained an optional acceleration clause upon default. *Id.* ¶ 2. The borrowers defaulted for the first time in 2008 and the creditor did not sue for the unpaid balance of the credit card debt until 2014. *Id.* ¶¶ 3-4. The court concluded that, when a credit card agreement contains an optional acceleration clause, the statute of limitations for a creditor to collect the entire outstanding debt begins to accrue upon the first defaulted payment. *Id.* ¶ 21. Consequently, the creditor's claim for the unpaid debt

4

was barred by the six-year statute of limitations of A.R.S. § 12-548(A)(2).  *Id.* ¶¶ 1, 21-22.

¶9          The Diazes similarly assert that BBVA was obliged to foreclose on the home either within six years of the first missed payment, or, at the latest, within six years of the last payment due just before their bankruptcy discharge.  BBVA argues in response, as it did below, that it was entitled to wait to foreclose (or exercise any other available remedy under the deed of trust) until the April 2040 maturity date of the deed of trust.  Any applicable statute of limitations, it argues, does not begin to run any sooner than that maturity date unless it affirmatively takes some earlier remedial action such as acceleration.  It argues, also as it did below, that— as we held recently in *Webster Bank N.A. v. Mutka*, 250 Ariz. 498, ¶ 12 (App. 2021)— *Mertola* applies only to unsecured credit card debt, not secured debt such as that involved here.

¶10          In *Webster*, the debtor, Mutka, entered a thirty-year HELOC, with a borrowing limit of $73,000, secured by a deed of trust on his home.  *Id.* ¶ 2.  During the first fifteen years of the loan, Mutka was required to make monthly interest payments, but was not obligated to make principal payments until the second fifteen years.  *Id.*  Four years after taking out the loan, Mutka failed to make a monthly interest payment, and, thereafter, made no further payments under the loan.  *Id.* ¶ 3.  Six and a half years after that default, the lender bank accelerated the debt under the optional acceleration clause in the loan agreement, and sued to collect the balance.  *Id.*  In response to the suit, Mutka moved for summary judgment, arguing that the six-year statute of limitations barred the bank's suit.  *Id.* ¶ 4.  The trial court denied the motion and, after a trial, the bank secured judgment against Mutka.  *Id.*

¶11          On appeal, this court recited the rule that "[w]hen a fixed debt is payable in installments, the statute of limitations 'commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the optional acceleration clause.'"  *Id.* ¶ 7 (quoting *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 494 (App. 1996)).  Mutka had argued that, because his debt was akin to credit card debt, *Mertola* applied, not *Navy Federal*, and that the "cause of action to collect the entire outstanding [credit card] debt accrues upon default:  that is, when the debtor first fails to make a full, agreed-to minimum monthly payment."  *Id.* ¶ 8 (quoting *Mertola*, 244 Ariz. 488, ¶ 21).  Consequently, Mutka argued, the bank's claim—filed six years and eight months after he first failed to make an interest payment—was

barred. *Id.* We disagreed with Mutka, recognizing that our supreme court in *Mertola*, in declining to apply the *Navy Federal* rule to credit card debt, had also "expressly declined" to determine whether that rule applied to other types of debt. *Id.* ¶ 9. We concluded that the *Navy Federal* rule applied to any secured HELOC with a defined maturity date, and that the statute of limitations to enforce the debt does not begin to run on future, unmatured installments due until the lender accelerates the debt. *Id.* Consequently, the bank's suit against Mutka, undertaken simultaneously with acceleration, was within the six-year statute of limitations. *Id.* ¶¶ 3-4, 13, 15.

¶12 We see no cogent reason to go beyond *Webster*. *See Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 471 (1974) (we should consider a prior court of appeals decision binding unless it is "based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable."). Because *Webster* limits the application of *Mertola* to credit card debt, or, at least, does not extend it to HELOCs, *Mertola* is not applicable in this case.[3] And because *Navy Federal* and *Webster* control, the trial court did not err in rejecting the application of *Mertola*.[4]

### *Effect of the Bankruptcy Discharge*

¶13 The Diazes further point out that the cases on which we and the trial court rely did not involve a bankruptcy discharge. The Diazes argue that, even if the statute of limitations did not begin to run when they stopped making payments under the note, it was certainly triggered by the discharge of their debt in bankruptcy. They argue that discharge is the equivalent of maturation of the debt. We disagree.

---

[3]The trial court here did not have the benefit of *Webster*, which was filed several months after the court's order of dismissal. The court, nonetheless, reached the same conclusion relying on *Andra R Miller Designs LLC v. US Bank NA*, 244 Ariz. 265 (App. 2018) ("*Miller*").

[4]The Diazes also argue that A.R.S. § 33-816 "prohibits a distinction between secured and unsecured debt for purposes of determining the appropriate statute of limitations when a deed of trust is involved," and therefore the trial court should not have refused to follow *Mertola* solely based on the security status of the debt. We see no such prohibition in that statute.

¶14      As an initial matter, the United States Bankruptcy Code controls the legal effect of a bankruptcy discharge. *See Stewart v. Underwood*, 146 Ariz. 145, 147 (App. 1985). Under non-bankruptcy law, the payment or discharge of an underlying debt extinguishes any lien or other right or interest in property securing the debt. *See Deming Nat. Bank v. Walraven*, 133 Ariz. 378, 379 (App. 1982) ("There can be no quarrel with the general principle that ordinarily when the secured obligation is discharged in full, any mortgage securing that obligation is extinguished and ceases to exist."). A debtor can no longer be sued on the note or security agreement.

¶15      Similarly, the discharge of a debt in bankruptcy expressly relieves the debtor of the underlying obligation, from risk of *in personam* suit on the debt, and even a personal judgment. 11 U.S.C. § 524(a)(1)-(3); *see Stewart*, 146 Ariz. at 148 (discharge under the Code is "a bar to enforcement of the debt as a personal obligation of the debtor"); *see also Tonnemacher v. Touche Ross & Co.*, 186 Ariz. 125, 129 (App. 1996) (action *in personam* is action seeking personal judgment). But a bankruptcy discharge does not extinguish a lien or other security agreement associated with the underlying obligation or bar an *in rem* suit to enforce it. 11 U.S.C. § 524(j) (discharge "does not operate as an injunction against an act by a creditor that is the holder of a secured claim"); *see Stewart*, 146 Ariz. at 146; *Transamerica Ins. Co. v. Trout*, 145 Ariz. 355, 359 (App. 1985); *Tonnemacher*, 186 Ariz. at 129 (action *in rem* seeks control over property).

¶16      Consequently, while the Diazes received relief of their personal obligation to BBVA when their debt was discharged in bankruptcy, the deed of trust they executed to secure that personal obligation was not extinguished. Therefore, unless its claim is indeed barred by the statute of limitations as the Diazes contend, BBVA retains whatever rights arise under the deed of trust *in rem* against the subject home, including foreclosure.

¶17      Nonetheless, the Diazes argue that, because the underlying debt was discharged, any acceleration of the debt by BBVA would be "illegal and meaningless." Therefore, they maintain, "[t]he [bankruptcy] discharge has the same legal effect as a maturation of the loan." The Diazes assert that, at a minimum, "[n]othing in § 12-548(A)(1) denies the possibility that a bankruptcy discharge can trigger the statute of limitations." In its ruling, the trial court did not address the Diazes' bankruptcy discharge.

¶18      The Diazes rely, as they did below, on an unpublished federal district court case, *Jarvis v. Fed. Nat'l Mortg. Ass'n*, No. C16-5194-RBL, 2017 WL 1438040 (W.D. Wash. Apr. 24, 2017), affirmed by an unpublished

federal appellate case, *Jarvis v. Fed. Nat'l Mortg. Ass'n*, 726 F. App'x 666 (9th Cir. 2018), to support their argument. They assert we should follow these cases and "turn to Washington State law," because "[t]here is no law on point in Arizona." In *Jarvis*, the facts were very similar to those here, and that court determined that the limitations period begins to run from the due date of the payment "owed immediately prior to the discharge of a borrower's personal liability in bankruptcy, because after discharge, a borrower no longer has forthcoming installments that he must pay." *Jarvis*, 2017 WL 1438040, at *2. As a result, it barred the lender from enforcing its rights under the deed of trust due to the passing of the statute of limitations following a bankruptcy discharge. *Id.*, at *3-4. Although *Jarvis* would certainly command that BBVA's *in rem* action here is similarly barred, *Jarvis* is not binding. *See Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, ¶ 29 (App. 2015). And, because our decision in *Stewart v. Underwood* is on point, *Jarvis* is not persuasive.

¶19    In *Stewart*, Underwood executed a promissory note payable to Stewart, secured by Underwood's home under a deed of trust. 146 Ariz. at 146. Underwood filed for bankruptcy and the debt owed to Stewart was ultimately discharged. *Id.* During the bankruptcy proceedings, Stewart did not file a proof of claim, nor did she accept an offer to reaffirm the debt. *Id.* Over a year after the discharge, Stewart commenced an action to foreclose on Underwood's residence under the deed of trust. *Id.* The trial court found the deed of trust to be "null and void, presumably because of" the bankruptcy discharge. *Id.* On appeal, Underwood argued that the bankruptcy discharge "superseded the six year limitations period [under A.R.S. §§ 12-548 and 33-816] and immediately enjoined any further action on the contract." *Id.* at 149-150. We concluded, however, that the discharge was "not an extinguishment of the debt, but only a bar to enforcement of the debt as a personal obligation of the debtor." *Id.* at 148. We wrote:

> A.R.S. § 12-548 sets out a precise period of limitation, six years. There is no indication that our legislature intended to create some type of sliding scale in which enforcement of the lien is precluded if some fortuitous circumstance prevents an action on the contract. Neither is there any indication that Congress intended the bankruptcy discharge to interfere with state statutes of limitation. In fact, . . . the intent was to recognize the continued existence of the debt

for purposes not inconsistent with the discharge
of personal liability.

*Id.* at 150.  Indeed, we determined that "a valid pre-bankruptcy lien that is not avoided during the bankruptcy proceedings survives those proceedings unaffected."  *Id*. at 146.[5]

**¶20**　　　　Arizona courts, therefore, have not adopted the *Jarvis* reasoning that the debtor is freed of his obligation for all purposes, thus necessarily triggering the statute of limitations as a consequence.  As discussed above, Arizona requires that the lender take affirmative steps to accelerate the debt to trigger the statute of limitations.  Failing that, a secured lender has until the maturity of the note or deed of trust to exercise his remedies in enforcing his secured interest.  BBVA took no such affirmative steps to accelerate the debt.  Although certainly, as a practical matter, the bankruptcy discharge bars BBVA from accelerating that debt by deeming it "immediately due and owing" and obtaining a money judgment, that remedy was lost only by the Diazes' unilateral action of seeking bankruptcy protection.  We see no statutory command that the practical loss of the remedy of acceleration by operation of the bankruptcy laws should also affect the other remedies available to BBVA under the deed of trust, namely judicial and non-judicial foreclosure.  Indeed, as stated above, the Diazes expressly agreed that the deed of trust would continue to secure their obligation to BBVA "whether the obligation to repay" the debt "may be or hereafter may become otherwise unenforceable."  And, although the Diazes do not ask us to depart from *Stewart*, we see no reason to do so.  Therefore, the trial court did not err in refusing to apply the reasoning of *Jarvis*.

### Attorney Fees and Costs

**¶21**　　　　BBVA requests its attorney fees and costs under Rule 21(a), Ariz. R. Civ. App. P., and A.R.S. § 12-341.01(A).  In our discretion, we grant BBVA, as the prevailing party on appeal, its reasonable attorney fees and costs upon its compliance with Rule 21.  *See Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, ¶ 27 (App. 2009).  The Diazes have also requested their attorney fees and costs on appeal, but they are not the

---

[5]The Diazes did not allege below or here, that the bankruptcy court expressly nullified the deed of trust.  Indeed, the Diazes acknowledge the continued post-discharge existence and, but for their limitations defense, enforceability of the deed of trust.

successful party and therefore, we deny their request.  *See Doneson v. Farmers Ins. Exch.*, 245 Ariz. 484, ¶ 12 (App. 2018).

## Disposition

**¶22**        For the foregoing reasons, we affirm the trial court's grant of BBVA's motion to dismiss.